1  P. GERHARDT ZACHER  (SBN:  043184)
MORDECAI D. BOONE  (SBN:  196811)
2  CARRIE A. LUBINSKI  (SBN:  174006)
GORDON & REES LLP
3  275 Battery Street, Suite 2000
San Francisco, CA  94111
4  Telephone:  (415) 986-5900
Facsimile:  (415) 986-8054
5
Attorneys for Defendant
6  3M COMPANY

7  ROBERT K. PHILLIPS  (SBN: 135088)
ERIN J. ILLMAN  (SBN: 238262)
8  PHILLIPS, SPALLAS & ANGSTADT LLP
650 California, 10th Floor
9  San Francisco, CA  94108
Phone:  (415) 278-9400
10  Fax:  (415) 278-9411

11  Attorneys for Defendant
WAL-MART STORES, INC.
12

13                UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                    SAN JOSE DIVISION

16  JOSEPH EASLEY and MARY EASLEY as the          )  CASE NO. C 07-03507 JF
surviving parents and lawful heirs of KASEY JO   )
17  EASLEY, deceased; The Estate of KASEY JO       )  **DEFENDANTS' OPPOSITION TO**
EASLEY, through Decedent's Administrator,         )  **PLAINTIFFS' MOTION FOR**
18  JOSEPH EASLEY,                                 )  **REMAND**
                                                   )
19                        Plaintiffs,              )
                                                   )  Date:        September 21, 2007
20        vs.                                      )  Time:        9:00 a.m.
                                                   )  Courtroom:  3
21  3M COMPANY; WALMART STORES, INC.;              )  Judge:       Hon. Jeremy Fogel
MICHAEL DOMINGOS; CHRISTOPHER                     )
22  BOGGS, MATTHEW YORK and DOES 1 through         )
100,                                               )
23                                                 )
                         Defendants.               )
24  _____       )

25

26

27

28

## I.    INTRODUCTION AND STATEMENT OF FACTS

Plaintiffs' Motion for Remand presents a single issue for this Court to resolve in determining whether diversity jurisdiction exists in this matter: Does California law permit participants engaged in unlawful behavior to sue one another for the consequences of that unlawful behavior? The answer is an obvious "no."

Plaintiffs, all citizens of the State of California, have sued 3M Company and Wal-Mart Stores, Inc. ("Defendants"), citizens of states other than California, for the injuries and death of their decedent, Kasey Easley ("decedent"), arising from her intentional misuse of the product, 3M Dust Remover. Additionally, Plaintiffs have ostensibly sued Defendants Michael Domingos, Christopher Boggs, and Matthew York, all residents of the State of California ("California Defendants"). As set forth in Defendants' Notice of Removal, and confirmed in Plaintiffs' Complaint and Motion for Remand ("Motion"), it is undisputed that Plaintiffs' decedent, an adult, and the California Defendants intentionally misused 3M Dust Remover as an inhalant to become voluntarily intoxicated in violation of California law. Complaint, ¶¶ 38, 58-63; Notice of Removal, ¶¶ 19-21; Motion, p. 8.[1]

Specifically, Plaintiffs allege that the decedent drove from her family home in San Jose to Salinas to meet the California Defendants. Complaint, ¶ 58. While on her way down to Salinas, she received a telephone call from Boggs who asked her to buy "air" and bring it with her for the purpose of "getting high." Complaint, ¶¶ 59, 89. Decedent stopped by a Wal-Mart store in Gilroy and purchased four cans of 3M Dust Remover, for her and the three California Defendants. Complaint, ¶ 59. On prior occasions, decedent had purchased 3M Dust Remover for the purpose of voluntarily inhaling the product with the California Defendants to produce a "euphoric high." Complaint, ¶ 88. Upon arriving at the house, decedent and the California Defendants all voluntarily began inhaling the compressed gases contained in the 3M Dust Remover for the purpose of becoming intoxicated. Complaint, ¶ 62. Such behavior is unlawful

\\\

---

[1] A true and correct copy of Defendants' Notice of Removal is attached hereto as Exhibit A for the court's easy reference.

CASE NO. C 07-03507 JF          DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

1    under California Health and Safety Code section 11999.1.  Complaint, ¶ 38, Notice of Removal,

2    ¶ 21.

3         It is further undisputed that Plaintiffs are suing the California Defendants solely for the

4    decedent's death and injuries resulting from such unlawful behavior.  Complaint, ¶¶ 87-93;

5    Notice of Removal, ¶ 21; Motion, p. 6.  Specifically, Plaintiffs allege that the California

6    Defendants were negligent in inhaling 3M Dust Remover with decedent, persuading decedent to

7    use a hot tub with them while all of them were intoxicated, continuing to inhale the 3M Dust

8    Remover with decedent while in the hot tub, and then leaving her alone in the hot tub while

9    intoxicated.  Complaint, ¶ 62, 88, 90.

10        As set forth in Defendants' Notice of Removal and reiterated below, California law

11   simply does not permit co-actors mutually engaged in unlawful conduct to sue one another.  The

12   California Defendants are fraudulently joined and are to be disregarded for purposes of

13   determining diversity.[2]  Accordingly, diversity jurisdiction exists and Plaintiffs' motion for

14   remand should be denied.

15   **II.**    **STATEMENT OF ISSUE TO BE DECIDED**

16        Are the California Defendants fraudulently joined because settled California law does not

17   permit participants engaged in unlawful behavior to sue one another for the consequences of that

18   same unlawful behavior?  A:  Yes.

19   **III.**   **THE REMOVAL WAS PROCEDURALLY PROPER**

20        Diversity of citizenship exists between Plaintiffs and the removing Defendants, the

21   removal petition was timely filed, and the jurisdictional amount in controversy is satisfied.

22   Notice of Removal, pp. 2-4.  Plaintiffs do not dispute any of these facts.  Rather, the only

23   procedural defect argued by Plaintiffs is that the California Defendants did not consent to the

24   removal petition.  Motion, p. 10.

25

26   _____

27   [2] Plaintiffs have brought both a cause of action for wrongful death on behalf of decedent's heirs and a survival action on behalf of the decedent against the California Defendants.  The heirs in a wrongful death action cannot maintain a cause of action against a defendant if the decedent cannot.  *See, e.g., Evans v. Celotex Corp.*, 194 Cal.App.3d, 744-747 (1987).  Thus, the fraudulent joinder analysis for both causes of action against the California

28   Defendants is the same.

-2-

1    However, a removing party is not required to obtain the consent of any defendant who

2  was fraudulently joined in the action, *e.g., Emrich v. Touch Ross & Co.,* 846 F.2d 1190, 1193 n.1

3  (9th Cir. 1988); *Steel Valley Authority v. American Standard, Inc.,* 809 F.2d 1006, 1009 n.2 (3rd

4  Cir. 1987); *Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812, 815 (5th Cir. 1993); *Rodriguez v. Hall*

5  *Ambulance,* 2004 WL 470624 at *8 (E.D. Cal. 2007).  Because the California Defendants were

6  fraudulently joined, their consent to removal was not necessary.

7  **IV.    LEGAL STANDARD OF FRAUDULENT JOINDER**

8    "Fraudulent joinder" is a term of art that permits removal of a case with non-diverse

9  defendants in three situations:  (1) where there is no possibility that plaintiff can prove a cause of

10  action against the non-diverse defendants under the applicable state law; (2) where there is

11  outright fraud in the pleading of jurisdictional facts; and (3) where a non-diverse defense is

12  joined on a claim unrelated to the claim against the diverse defendant.  The Rutter Group,

13  *California Practice Guide:  Federal Civil Procedure Before Trial* §§ 2:670-2:671.1 (2007).  It is

14  the first situation that is applicable here—that is, there is no possibility that Plaintiffs can prove a

15  cause of action against the California Defendants under California law.

16    Recent Ninth Circuit case law sets forth the proper standard of the fraudulent joinder

17  doctrine applicable here as follows:

18    Although there is a general presumption against fraudulent joinder
19    [internal citations omitted], "[i]f the plaintiff fails to state a cause
     of action against a resident defendant, and the failure is obvious
     according to the settled rules of the state, the joinder of the resident
20    defendant is fraudulent."

21  *Hamilton Materials, Inc. v. Dow Chemical Corporation,* ___ F.3d. ___, (9th Cir. 2007), 2007

22  WL 2080179 at *1 (9th Cir. 2007), quoting *McCabe v. General Foods Corp.* 811 F.2d 1136,

23  1139 (9th Cir. 1987).  *See also Santos v. Golden Eagle Ins. Co.,* 2007 WL 1394030 at *2 (N.D.

24  Cal. 2007)(same citing *McCabe* at 1139).

25    Put another way, the "test is whether on the face of the removed complaint there is any

26  possibility plaintiff could prevail" against the non-diverse defendants; if not, the resident

27  defendant's presence in the lawsuit is ignored for determining diversity.  *Simpson v. Union*

28  *Pacific Railroad Co.,* 282 F.Supp.2d 1151, 1155 (N.D. Cal. 2003)(same citing *Morris v. Princess*

-3-

1   *Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).[3]  As explained below, there is no possibility

2   that Plaintiffs will be able to recover against the California Defendants under settled California

3   law.

4   **V.      FOR OVER FIFTY (50) YEARS, THE SETTLED LAW OF CALIFORNIA HAS
          NOT PERMITTED PARTICIPANTS OF UNLAWFUL BEHAVIOR TO SUE ONE**

5   **ANOTHER FOR THE CONSEQUENCES OF THAT UNLAWFUL BEHAVIOR**

6         As acknowledged by Plaintiffs in their Complaint (¶ 38), the California Legislature has

7   outlawed the use of any product as an inhalant to achieve intoxication.  California Health and

8   Safety Code § 11999.1.  In their Notice of Removal and above, Defendants set forth the relevant

9   allegations of Plaintiffs' Complaint demonstrating that decedent and the California Defendants

10  were all engaging in unlawful behavior by inhaling 3M Dust Remover; and that it is the

11  consequence of this unlawful behavior which forms the basis of Plaintiffs' claims against them.

12  Notice of Removal, ¶¶ 19-21; Section I, *supra*.

13        California law has held unequivocally for over fifty years that "a party who consents to

14  and participates in an … illegal act cannot recover damages from other participants for the

15  consequence of that act." *Sayadoff v. Warda*, (1954) 125 Cal.App.2d 626, 630 (citing and

16  following the rule of M*iller v. Bennett*, 190 Va. 162, 56 S.E.2d 217 (1949)).  As the *Sayadoff*

17  Court stated, California simply has no interest in providing a civil remedy "[w]here one submits

18  to an illegal act voluntarily and suffers injury thereby." *Id.* at 632.  This is so because as a matter

19  of public policy a duty of care simply does not exist in favor of an unlawful wrongdoer as among

20  her fellow transgressors.  *Kindt v. Kauffman* (1976) 57 Cal.App.3d 845, 856 ("[a] driver who

21  engages in a speed contest on a crowded city street, attains a speed of 100 miles per hour, loses

22  control of his vehicle, injures himself, and then sues his fellow contestant …. Would we, should

23  we, allow such a driver to recover?  Certainly not.").[4]

---

[3]  Plaintiffs cite *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581 (C.D. Cal. 1998) suggesting a more onerous standard is applicable to the fraudulent joinder analysis.  However, *Diaz* involved a post-removal amendment adding a non-diverse defendant and whether that defendant was added with the specific intent to defeat diversity.  185 F.R.D. 581, 586.  Such questions are not present here.

[4]  Plaintiffs incorrectly imply in their moving papers that *Kindt* has been overruled in its entirety.  Motion, p. 9.  Not so.  In *Ewing v. Cloverleaf Bowl*, 20 Cal.3d 989 (1978), the California Supreme Court merely stated in a footnote that *Kindt* was overruled only to the extent that it held that a lawful bar patron committed wilful misconduct as a matter of law by becoming intoxicated from alcohol.  *Ewing*, 20 Cal.3d 404, n10.  That issue is not present here.

-4-

1    Plaintiffs incorrectly inform the Court that there is a "significant body of case law" that

2 permits co-participants of unlawful acts to sue one another. Motion at 9. None of the three cases

3 cited by Plaintiffs in support of this proposition involve unlawful actors suing one another for the

4 consequences of their joint unlawful conduct. *Calvillo-Silva v. Home Grocery*, 19 Cal.4th 714,

5 736-37 (1998) (plaintiff burglar sued store for employee's excessive force in shooting him in the

6 back while he was exiting the store after burglary); *Cantor v. Anderson,* 126 Cal.App.3d 124,

7 126 (1981) (plaintiff, owner of a mental health facility, sued defendant for lawfully serving

8 alcohol to one of her resident patients who subsequently turned violent and injured plaintiff).

9 *Hudson v. Orville Craft*, 33 Cal.2d 654, 655-56, 58 (1949) (plaintiff boxer sued the promoters of

10 an unlicensed and hence illegal prize fight for his injuries; plaintiff boxer, *although unable to sue*

11 *his fellow unlicensed boxer*, could sue promoters as plaintiff did not violate the same statutes as

12 promoters and hence was not *in para delicto* with them.)

13    This area of law is so well-settled in California that Defendants are unaware of any

14 reported case whereby one participant in an unlawful act was permitted to sue a co-participant of

15 that act for alleged negligence in its commission. This is so because California law does not, and

16 should not as a matter of policy, impose duties of care in the conduct of unlawful or criminal

17 behavior.

18

19 **VI.    DENYING PLAINTIFFS' MOTION FOR REMAND DOES NOT REQUIRE A**
    **DETERMINATION BY THE COURT OF ANY FACTUAL ISSUES**

20    Plaintiffs' last-ditch attempt to overcome the settled law of California and send this case

21 back to state court is to argue that the Court would need to make improper factual determinations

22 if it were to deny the Motion for Remand. Specifically, Plaintiffs' argue that the Court would

23 need to determine whether decedent "was in a position to give consent and whether she was

24 comparatively negligent." Motion at 8.

25    Although this Court may "pierce the pleadings" and consider summary judgment type

26 evidence in deciding Plaintiffs' motion, *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003), there is

27 no need to do so here. Plaintiffs' Complaint specifically alleges that she engaged in unlawful

28 behavior with the California Defendants, and it is that behavior which forms the basis of her

-5-

1    claims against them.  Complaint, ¶¶ 38 (use of inhalants unlawful); 89-90 (California Defendants

2    negligently inhaled the product with decedent in the hot tub).  As such, California law does not

3    permit her to sue the California Defendants as a matter of public policy.  There are simply no

4    issues regarding the duties or negligence of the decedent and the California Defendants vis-à-vis

5    each other to be resolved.  Such issues are non-existent as a matter of law.

6         With regard to decedent's consent or voluntariness in the unlawful behavior, it is

7    repeatedly alleged that decedent voluntarily purchased the 3M Dust Remover for the California

8    Defendants, as she had done previously, so that all of them could become intoxicated by inhaling

9    it.  *See, e.g.,* Complaint, ¶¶ 62, 88; Notice of Removal ¶¶ 19-21.  It is further alleged that the

10   decedent, along with the California Defendants, voluntarily became intoxicated by abusing 3M

11   Dust Remover as an inhalant.  *Id.*  Even assuming that the decedent later became incapacitated

12   by her voluntary intoxication, that does not render her behavior of inhaling 3M Dust Remover

13   with the California Defendants nonconsensual or involuntary from a legal standpoint.  *See, e.g.,*

14   *People v. Boyer*, 28 Cal.4th 412, 469 (2006) ("voluntary intoxication, even if it induced

15   unconsciousness, is not a defense to crime…."); *People v. Hood*, 1 Cal.3d 444, 458-459

16   (1969)(voluntary intoxication does not negate general criminal responsibility).

17        Accordingly, no factual determinations of comparative negligence or involuntariness

18   need be made by this Court in deciding this Motion.  Plaintiffs' decedent, by engaging in

19   unlawful behavior with the California Defendants, cannot maintain a cause of action against

20   them under California law.

21   **VII.   PLAINTIFFS ARE NOT ENTITLED TO ATTORNEY FEES AND COSTS IF
22          THE CASE IS REMANDED BECAUSE DEFENDANTS HAD AN OBJECTIVELY
            REASONABLE BASIS FOR REMOVAL**

23        If this Court disagrees with Defendants and remands this case to state court, Plaintiffs'

24   request for cost and attorneys' fees should be denied.  "[A]n order remanding the case *may*

25   require payment of just costs and any actual expenses, including attorney fees, incurred as a

26   result of the removal."  28 U.S.C. § 1447(c), emphasis added.  However, "there is no automatic

27   entitlement to an award of attorney's fees.  Indeed, the clear language of the statute makes such

28   an award discretionary."  *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir. 2000).

-6-

1    Generally, "[a]bsent unusual circumstances, attorney's fees should not be awarded when

2  the removing party has an objectively reasonable basis for removal." *Patel v. Del Taco, Inc.*,

3  446 F.3d 996, 999 (9th Cir. 2006) quoting *Martin v. Franklin Capital Corp.*, ___ U.S. ___, 126

4  S.Ct. 704, 708, 163 L.Ed.2d 547 (2005); *accord Zito v. State Farm Gen. Ins. Co.*, 2007 WL

5  196685 at *3 (N.D. Cal.); *Blue v. Equifax Information Services, LLC*, 2007 WL 602295 at *4

6  (N.D. Cal.).

7    Here, Defendants had "an objectively reasonable basis for removal." As stated above,

8  Plaintiffs allege in their Complaint that using 3M Dust Remover as an inhalant is unlawful and

9  that decedent engaged in this unlawful behavior with the California Defendants. There is no

10  reported case in California whereby one engaged in unlawful behavior was permitted to sue a

11  fellow participant for the consequences of that unlawful behavior. Further, Plaintiffs' have not

12  alleged that Defendants have acted in bad faith in any manner in removing this case.

13  Accordingly, Plaintiffs' request for costs and attorney's fees should be denied.

14  **VIII.  CONCLUSION**

15    For the foregoing reasons, it is requested that Plaintiffs' Motion for Remand be denied

16  and that this case remain in the United States District Court, Northern District of California, San

17  Jose Division.

18

19  Dated:  August 31, 2007                GORDON & REES LLP

20                                          By:  _____

21                                               P. Gerhardt Zacher
                                                 Mordecai D. Boone
22                                               Carrie A. Lubinski
                                                 Attorneys for Defendant 3M COMPANY
23

24  Dated:  August 31, 2007                PHILLIPS, SPALLAS & ANGSTADT LLP

25                                          By:  _____

26                                               Robert K. Phillips
                                                 Erin J. Illman
27                                               Attorneys for Defendant WAL-MART
                                                 STORES, INC.
28

-7-

# Exhibit A

COPY

1 | P. GERHARDT ZACHER (SBN: 043184)
MORDECAI D. BOONE (SBN: 196811)
2 | CARRIE A. LUBINSKI (SBN: 174006)
GORDON & REES LLP
3 | 275 Battery Street, Suite 2000
San Francisco, CA 94111
4 | Telephone: (415) 986-5900
Facsimile: (415) 986-8054
5 |
Attorneys for Defendant
6 | 3M COMPANY
7 | ROBERT K. PHILLIPS (SBN: 135088)
ERIN J. ILLMAN (SBN: 238262)
8 | PHILLIPS, SPALLAS & ANGSTADT LLP
650 California, 10th Floor
9 | San Francisco, CA 94108
Phone: (415) 278-9400
10 | Fax: (415) 278-9411
11 | Attorneys for Defendant
WAL-MART STORES, INC.
12 |
13 | UNITED STATES DISTRICT COURT
14 | NORTHERN DISTRICT OF CALIFORNIA
15 |
16 | JOSEPH EASLEY and MARY EASLEY as the    CASE NO. C07 03507
surviving parents and lawful heirs of KASEY JO
17 | EASLEY, deceased; The Estate of KASEY JO    **NOTICE OF REMOVAL OF CIVIL**
EASLEY, through Decedent's Administrator,    **ACTION (DIVERSITY)**
18 | JOSEPH EASLEY,
19 | Plaintiffs,
20 | vs.    Complaint filed:    May 31, 2007
21 | 3M COMPANY; WALMART STORES, INC.;
MICHAEL DOMINGOS; CHRISTOPHER
22 | BOGGS, MATTHEW YORK and DOES 1 through
100,
23 |
Defendants.
24 |
25 |
26 |
27 |
28 |

MMM/1045878/1372834v.2

NOTICE OF REMOVAL OF CIVIL ACTION (DIVERSITY)

1    Defendants 3M Company and Wal-Mart Stores, Inc., pursuant to 28 U.S.C. § 1441, file

2    this Notice of Removal of this action entitled *Joseph Easley, et al. v. 3M Company, et al.*, Case

3    No. M84877, from the Superior Court of the State of California, County of Monterey

4    ("Monterey County Superior Court") to the United States District Court for the Northern District

5    of California, San Jose Division.  The grounds for removal are as follows:

6    **I.    INTRODUCTION**

7    1.    Joseph Easley and Mary Easley as the surviving parents and lawful heirs of Kasey

8    Jo Easley, deceased and The Estate of Kasey Jo Easley, through Decedent's Administrator,

9    Joseph Easley (hereinafter collectively referred to unless otherwise stated as "Plaintiffs") filed

10   this products liability/negligence action against Defendants 3M Company, Wal-Mart Stores, Inc.,

11   Michael Domingos, Christopher Boggs, and Matthew York in the Monterey County Superior

12   Court on or about May 31, 2007.  Plaintiffs allege injuries, including death, as a result of 19-

13   year-old Kasey Jo Easley's ("Decedent") intentional and unlawful use of a substance to become

14   intoxicated.  It is alleged that Decedent intentionally and unlawfully used the product known as

15   3M Dust Remover by voluntarily inhaling it into her lungs.  This form of inhalant abuse is

16   commonly called "dusting" or "huffing."  *See* generally Complaint For Damages Pursuant To

17   Wrongful Death Based Upon Strict Product Liability (Design Defect), Strict Product Liability

18   (Failure To Warn), Negligence, and Survival Claim & Request For Punitive Damages

19   ("Complaint"), attached as **Exhibit 1**.

20   2.    3M Company manufactured, sold, and distributed 3M Dust Remover to retail

21   stores, including Wal-Mart Stores, Inc.  3M Dust Remover is compressed air designed and

22   lawfully used for dusting electrical, auto, home and office equipment.

23   3.    Wal-Mart Stores, Inc., a large retailer, allegedly sold four cans of 3M Dust

24   Remover to Decedent from its retail outlet located in Gilroy, California, on or about

25   November 23, 2006.  *See* Complaint ¶ 59, [**Ex. 1**].

26   4.    Michael Domingos ("Domingos"), Christopher Boggs ("Boggs"), and Matthew

27   York ("York") ("collectively the "California Defendants") are three individuals who allegedly

28   invited Decedent to the home of Domingos located at 22552 Indian Springs Road in Salinas,

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1

1  California, and where the Decedent and the California Defendants huffed from the cans of 3M

2  Dust Remover she unlawfully purchased to "get high." The California Defendants are

3  fraudulently joined because Plaintiffs have no reasonable possibility of prevailing on any of the

4  claims pled against them in that California law does not recognize causes of action between or

5  among actors voluntarily engaged in intentional unlawful behavior. *See, e.g., Sayadoff v. Warda,*

6  (1954) 125 Cal.App.2d 626, 630.

7       5.    The Court has original jurisdiction over this action under 28 U.S.C. § 1332, and

8  this action is removable under 28 U.S.C. § 1441(b), in that, excluding the fraudulently joined

9  Defendants, it is a civil action between citizens of different states and the matter in controversy

10  exceeds the sum of $75,000, exclusive of interest and costs.

11       6.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other

12  papers or exhibits filed in the state court are attached hereto as **Exhibit 2**.

13  **II.**    **DIVERSITY OF CITIZENSHIP EXISTS**

14       7.    Plaintiffs are and were at the commencement of this action residents of California.

15  *See* Complaint ¶¶ 7 and 9 **[Ex. 1]**.

16       8.    Defendant 3MCompany is and was at the commencement of this action a

17  Delaware corporation with its principal place of business in Minnesota.

18       9.    Defendant Wal-Mart Stores, Inc., is and was at the commencement of this action a

19  Delaware corporation with its principal place of business in Arkansas.

20       10.    It is alleged that Domingos, Boggs, and York are and at the commencement of

21  this action were California residents (*see* Complaint ¶¶ 14, 16, and 17 **[Ex. 1]**) and citizens of

22  California. As set forth below, however, these three individual California Defendants are

23  fraudulently joined, and their presence in this action does not destroy diversity. *See United*

24  *Computer Systems, Inc. v. AT&T Corporation*, 298 F.3d 756, 761 (9th Cir. 2002). The

25  citizenship of said California Defendants should be disregarded for purposes of determining

26  jurisdiction under 28 U.S.C. § 1332 and § 1441(b) on the ground that there is no possibility that

27  Plaintiffs will be able to establish liability against said California Defendants for the reasons that

28  follow.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

2

III.    **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

11.    Where, as here, the jurisdictional amount is not alleged, it can nevertheless be determined when it is "facially apparent" from the complaint itself. *Singer v. State Farm Mut. Automobile Ins. Co.*, 116 F.3d 373, 376 (9th Cir.1997)—holding that district court may consider whether jurisdictional amount is "facially apparent" from the complaint. A court may also consider the removal notice and post-removal evidence concerning the amount in controversy. *Id.*

12.    In this case, it is "facially apparent" that the amount in controversy exceeds $75,000. Plaintiffs allege that Decedent "sustained serious injuries resulting in her death" as a result of inhaling from the 3M Dust Remover while sitting in a hot tub. *See* Complaint ¶¶ 81, 86, and 90 and generally Complaint **[Ex. 1]**. Plaintiffs also allege that "on or about November 23, 2006, through November 25, 2006, and prior to her death, [Decedent] incurred substantial expenses for emergency and/or medical services rendered in connection with this incident. [Decedent] was treated at Salinas Valley Memorial Hospital for the injuries she sustained in the subject incident for almost two days prior to her death." *See* Complaint ¶ 97 **[Ex. 1]**. Plaintiffs further allege that because of Decedent's wrongful death Plaintiffs suffered and continue to suffer loss of love, companionship, comfort, affection, solace and the moral support of their daughter, incurred funeral and burial expenses, and seek recovery of other such relief as may be just and provided for under California Code of Civil Procedure § 377.61. *See* Complaint ¶¶ 70-73 **[Ex. 1]**. Plaintiffs also allege that "several items of personal property belonging to [Decedent] were damaged, lost or destroyed" *See* Complaint ¶ 96 **[Ex. 1]**. Finally, Plaintiffs seek recovery of punitive and exemplary damages. *See* Complaint ¶ 101 **[Ex. 1]**.

IV.    **REMOVAL IS OTHERWISE PROPER**

13.    Plaintiffs commenced this action on or about May 31, 2007, and completed service of the complaint and required documents on 3M Company on June 5, 2007. See Service of Process Transmittals for 3M Company and Wal-Mart Stores, Inc. and Summons, attached as **Exhibit 3**. Therefore, this Notice of Removal is timely filed within 30 days of receipt of the initial pleading and within one year of commencement of the action.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

3

14.     Venue exists in the United States District Court for the Northern District of California, San Jose Division, because the matter is currently pending in the Monterey County Superior Court which is within the jurisdictional area of the United States District Court for the Northern District of California, San Jose Division.

15.     Written notice of the filing of the Notice of Removal will be promptly served on Plaintiffs' counsel, and a copy will be promptly filed with the Clerk of the Monterey County Superior Court pursuant to 28 U.S.C. § 1446(d). A copy of the Notice of Filing of Notice of Removal to Federal Court is attached as **Exhibit 4**.

16.     The consent of Domingos, Boggs, and York to this removal is not required because these Defendants are fraudulently joined. *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

**V.      THE CALIFORNIA DEFENDANTS ARE FRAUDULENTLY JOINED**

17.     Plaintiffs have fraudulently joined Domingos, Boggs, and York in an attempt to defeat diversity jurisdiction. Fraudulent joinder is a term of art. It is "merely the rubric applied when a court finds either that no cause of action is stated against the non-diverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and … **there is no colorable ground for so claiming**." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) [emphasis added]; *see also McCabe v. General Foods Corp.*, 811 F2d 1336, 1339 (9th Cir. 1987). It does **not** have to be shown that the joinder was for the purpose of preventing removal. Rather, the question is simply whether the plaintiff will be able to establish liability against the party in question. *Ritchey v. Upjohn Drug Co.*, 139 F3d 113, 1218-1319 (9th Cir. 1998).

18.     Plaintiffs do not have a cause of action against the resident (non-diverse) Defendants Domingos, Boggs, and York under California law. Plaintiffs have alleged a single cause of action for negligence against the California Defendants for their actions in engaging in

\\\
\\\
\\\

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

4

1    intentional unlawful behavior with the Decedent.  *See* Fourth Cause Of Action and Survival

2    Claim and Request For Punitive Damages (Fifth Cause Of Action).[1]

3        19.    Plaintiffs allege in pertinent part the following facts.  That on the evening of

4    November 23, 2006, Decedent was invited to the home of Domingos and Boggs.  Complaint ¶¶ 3

5    and 59 **[Ex. 1]**.  Decedent drove from her family home in San Jose to Salinas to meet the

6    California Defendants.  While on her way down to Salinas, she received a telephone call from

7    Boggs who asked her to buy "air" and bring it with her for the purpose of "getting high."

8    Complaint ¶¶ 89 and 59 **[Ex. 1]**.  Decedent stopped by a Wal-Mart in Gilroy and purchased four

9    cans of 3M Dust Remover, presumably for her and the three California Defendants.  Complaint

10   ¶ 59 **[Ex. 1]**.  On previous occasions, these same California Defendants instructed Decedent to

11   purchase the 3M Dust Remover and bring it over to their house[2] for the purpose of inhaling the

12   product to produce a euphoric "high."  Complaint ¶ 88 **[Ex. 1]**.  After purchasing the cans of 3M

13   Dust Remover, Decedent met Boggs and York at a local gas station in Salinas.  After a quick

14   stop at the gas station, they drove to the house shared by Boggs and Domingos and arrived there

15   sometime between 10:30-10:45 p.m.  Complaint ¶¶ 60-61 **[Ex. 1]**.  Upon arriving at the house,

16   Decedent and York engaged in a conversation with Domingos and shortly thereafter, they all

17   began inhaling the compressed gases contained in the 3M Dust Remover for the purpose of

18   becoming intoxicated.  Complaint ¶ 62 **[Ex. 1]**.

19       20.    Plaintiffs allege that while Decedent was under the influence of the inhalant,

20   Boggs, Domingos, and York "enticed" her to use the hot tub located in the back of the residence

21   and encouraged her to keep inhaling the 3M Dust Remover with them.  Complaint ¶ 62 **[Ex. 1]**.

22   Plaintiffs also allege that Boggs and York also got in the hot tub with Decedent and they too

23   continued to inhale from the 3M Dust Remover.  Complaint ¶ 62 **[Ex. 1]**.  It is also alleged by

24   Plaintiffs that at some point in time Boggs and York got out of the hot tub and Decedent

25

26   [1] A survival claim is not a cause of action in California.  California Code of Civil Procedure § 377.20 *et. seq.*
     Article 2 Survival and Continuation and Article 3 Decedent's Cause Of Action  under Chapter 4 Effect of Death
27   (§§377.20-377.35) do **not** establish a cause of action; these sections simply provide for and allow for decedent's
     causes of action to pass to decedent's successor-in-interest or representative.
28   [2] A home allegedly known to Decedent and others as a place where people could unlawfully consume drugs and
     other substances such as inhalants. (¶ 88.)

NOTICE OF REMOVAL OF CIVIL ACTION (DIVERSITY)

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1  remained in the hot tub alone and when Boggs and York returned to the hot tub they found

2  Decedent laying face down in the water.  Complaint ¶ 63 **[Ex. 1]**.  Plaintiffs allege that as a result

3  of the wrongful conduct of these Defendants, Decedent sustained serious injuries resulting in her

4  death.  Complaint ¶ 90 **[Ex. 1]**.

5      21.    As acknowledged by Plaintiffs' in their Complaint (¶ 38), the California

6  Legislature has outlawed the use of any product as an inhalant to achieve intoxication.[3]

7  California Health and Safety Code § 11999.1 states in relevant part the following:

> (d)  The Legislature has determined that the possession with the intent to be under the influence, or being under the influence of toluene, or any substance or material containing toluene, **or any substance with similar toxic qualities, <u>is unlawful</u>**.  Some substances or materials containing toluene, or substances with similar toxic qualities are commonly referred to, but not limited to, **inhalants** such as cement, glue, and paint thinner.  (Emphasis added.)

13     22.    Based upon the facts alleged in the Complaint and Section 11999.1(d), Decedent

14  and the California Defendants were all intentionally engaging in unlawful conduct in possessing

15  3M Dust Remover with the intent to be under the influence and being under the influence of an

16  inhalant on the evening of the subject incident.  California Health and Safety Code § 11999.1(d);

17  *see also* Complaint ¶ 38 and generally Complaint **[Ex. 1]**.

18     23.    California law holds that "a party who consents to and participates in an … illegal

19  act cannot recover damages from other participants for the consequence of that act."  *Sayadoff v.*

20  *Warda*, (1954) 125 Cal.App.2d 626, 630 (citing and following the rule of *Miller v. Bennett*, 190

21  Va. 162, 56 S.E.2d 217 (1949)).  This is so because a duty of care simply does not exist in favor

22  of an unlawful wrongdoer as among her fellow transgressors as a matter of public policy.  *See*

23  *Kindt v. Kauffman*, (1976) 57 Cal.App.3d 845, 856-860.  *See also Tri-Q, Inc. v. Sta-Hi Corp.*,

24  (1965) 63 Cal.2d 199, 218 (California law prohibits allowing a person to "recover compensation

25  for an illegal act" from another transgressor under the doctrine of *in pari delicto*).

26

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

---

[3]  Plaintiffs, however, incorrectly state that this section only applies to minors.  To the contrary, this subsection does not limit this provision to minors.  Subsection (d) under Division 10.7 entitled *Illegal Use of Drugs and Alcohol* applies to all persons.

6

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

24.    In *Sayadoff, supra,* 125 Cal.App.2d 626, the Court refused to allow the plaintiff to sue her paramour for the medical complications that arose from an abortion he procured for her—abortion was illegal at the time of this decision.  The Court held that California had no interest in providing a civil remedy "[w]here one submits to an illegal act voluntarily and suffers injury thereby." *Id.* at 632.  Likewise, in the context of drag-racing, the California Court Appeal stated:

> [A] driver who engages in a speed contest on a crowded city street,
> attains a speed of 100 miles per hour, loses control of his vehicle,
> injures himself, and then sues his fellow contestant …. Would we,
> should we, allow such a driver to recover?  Certainly not. *Kindt,
> supra,* 57 Cal.App.3d 856.[4]

25.    Tellingly, there have been very few reported decisions whereby one participant in an illegal act sues a co-participant of that act for alleged negligence in its commission.  This only serves to confirm that the public policy of the State of California does not recognize this type of lawsuit between or among illegal actors.

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

---

[4] *Kindt* involved the issue of whether a lawful patron of a bar may sue the bar for resulting injuries in providing her liquor while obviously intoxicated. This issue was the subject of numerous California cases in the 1970s. However, this line of cases is inapposite as it is lawful to become intoxicated by drinking liquor, while it is unlawful to become intoxicated using products as inhalants in California. In 1978, the Legislature enacted Civil Code section 1714(b) and (c) and Business and Professions Code section 25602(b) and (c). These sections provide, essentially, legal immunity to bar owners and social hosts who provide alcohol to their guests.

7

1

## VI.    CONCLUSION

2    WHEREFORE, Defendants 3M Company and Wal-Mart Stores, Inc., respectfully request

3    that the above-entitled matter be removed to the United States District Court for the Northern

4    District of California, San Jose Division, from the Monterey County Superior Court because

5    Domingos, Boggs, and York are fraudulently joined as Plaintiffs have no reasonable possibility

6    of prevailing on the negligence cause of action pled against them, and thus no good-faith intent

7    to pursue them to judgment.

8

9    Dated:  July 5, 2007                                    GORDON & REES LLP

10

11                                                           By:

12                                                           P. Gerhardt Zacher
                                                             Mordecai D. Boone
13                                                           Carrie A. Lubinski
                                                             Attorneys for Defendant 3M COMPANY

14

15    Dated:  July 5, 2007                                   PHILLIPS, SPALLAS & ANGSTADT LLP

16

17                                                           By:  _____
                                                             Robert K. Phillips
18                                                           Erin J. Illman
                                                             Attorneys for Defendant WAL-MART
19                                                           STORES, INC.

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

8

# Exhibit 1

1  FRANK M. PITRE (#100077)
   Fpitre@cpmlegal.com
2  NIKI B. OKCU (#229345)
   Nokcu@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
4  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
6
7  ALAN F. HUNTER (#099805)
   Hunter@gclitigation.com
8  **GAVIN & CUNNINGHAM**
   1530 The Alameda, Suite 210
9  San Jose, California 95126
   Telephone: (408) 294-8500
   Facsimile: (408) 294-8596
10

**FILED**

MAY 3 1 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT

MARY C. GILBERT

11  *Attorneys for Plaintiffs Joseph and Mary Easley*

12

13        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14           **IN AND FOR THE COUNTY OF MONTEREY**

15

16  JOSEPH EASLEY and MARY EASLEY as )    CASE NO.   **M 8 4 8 7 7**
    the surviving parents and lawful heirs of )
17  KASEY JO EASLEY, deceased; The Estate )    **COMPLAINT FOR DAMAGES**
    of KASEY JO EASLEY, through )    **PURSUANT TO WRONGFUL DEATH**
18  Decedent's Administrator, JOSEPH )    **BASED UPON**
    EASLEY )
19                                              )
                Plaintiffs, )    1.   **STRICT PRODUCT LIABILITY**
20                                              )      **(DESIGN DEFECT)**
         v. )
21                                              )    2.   **STRICT PRODUCT LIABILITY**
    3M COMPANY; WALMART STORES, )      **(FAILURE TO WARN)**
22  INC.; MICHAEL DOMINGOS; )
    CHRISTOPHER BOGGS, MATTHEW )    3.   **NEGLIGENCE (AGAINST 3M**
23  YORK and DOES 1 through 100, )      **COMPANY AND WALMART)**
                                                )
24              Defendants. )    4.   **NEGLIGENCE (AGAINST**
    _____ )      **MICHAEL DOMINGOS,**
25                                                    **CHRISTOPHER BOGGS AND**
                                                      **MATTHEW YORK)**
26
                                              5.   **SURVIVAL CLAIM &**
27                                                    **REQUEST FOR PUNITIVE**
                                                      **DAMAGES**
28

                                              **DEMAND FOR JURY TRIAL**

                                    _____
                                       **COMPLAINT**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................... 1

    A.  Overview .............................................................. 1

    B.  Factual Background .................................................. 2

II.  PARTIES ................................................................... 2

    A.  Plaintiffs ............................................................ 2

    B.  Defendants ........................................................... 3

    C.  Other Defendants .................................................... 5

III.  JURISDICTION AND VENUE .................................................. 5

IV.  AGENCY, AIDING AND ABETTING ............................................ 5

V.  GENERAL ALLEGATIONS .................................................... 7

    A.  Defendants Manufactured, Distributed, Promoted and Sold a Dangerous Product ..................................................... 7

    B.  Inhalant Abuse Has Been A Wide Spread Problem Two Decades ...... 10

    C.  The Incident ........................................................ 12

VI.  CAUSES OF ACTION ....................................................... 13

    FIRST CAUSE OF ACTION ................................................ 13
       (Strict Liability Design Defect Against 3M COMPANY AND WALMART) ........................................................... 13

    SECOND CAUSE OF ACTION .............................................. 15
       (Strict Liability Failure to Warn Against 3M COMPANY AND WALMART) ........................................................... 15

    THIRD CAUSE OF ACTION ................................................ 16
       (Negligence Against 3M COMPANY AND WALMART) ........... 16

    FOURTH CAUSE OF ACTION .............................................. 18
       (Negligence Against MICHAEL DOMINGOS, CHRISTOPHER BOGGS and MATTHEW YORK) .......................................... 18

    FIFTH CAUSE OF ACTION ................................................ 19
       (Survival Cause of Action And Request For Punitive Damages On Behalf of the Estate of KASEY JO EASLEY Against All Defendants) .. 19

PRAYER FOR RELIEF ......................................................... 21

JURY DEMAND ............................................................... 22

I.    **INTRODUCTION**

A.    **Overview**

1.    On November 25, 2006, the life of 19 year old KASEY JO EASLEY (hereafter "KASEY") came to an abrupt end as a consequence of her naive inhalation of a highly toxic and addictive substance known as difluoroethane, a lethal chemical contained in a popular product used to clean dust from home or office equipment.  The product is well known by its brand name, "3M Dust Remover", and was manufactured, distributed and sold by the 3M COMPANY. The product has become widely successful -- not so much for its revolutionary cleaning properties -- but because of its known association with inhalant abuse by children and teenagers who seek a cheap "high".  The tragedy is that the deadly consequences of the practice of inhaling the compressed gas contents of the product, known as "huffing" or "dusting", are beguiling for the most likely targets -- children and teenagers duped by the misconception they are merely sniffing "air".  In reality, they are exposing themselves to a toxic gas that is capable of causing sudden death.

2.    The death of KASEY JO EASLEY was the foreseeable by product of the predatory actions of Defendants MICHAEL DOMINGOS, CHRISTOPHER BOGGS and MATTHEW YORK, who lured and enticed KASEY to their home for the purpose of engaging in "dusting"; and the callous disregard for safety and human life by Defendants 3M COMPANY and WALMART, the largest retailer of 3M Dust Remover, who promote and sell a product widely known to be used by children and teenagers to produce mind-altering effects with lethal consequences, without adequate warnings or the inclusion of available additives which deter inhalant abuse.



**B.     Factual Background**

3.     On the evening of November 23, 2006, KASEY was invited to the home of Defendants MICHAEL DOMINGOS and CHRISTOPHER BOGGS. DOMINGOS, who had a prior history of unlawful misconduct with minors and for providing drugs to teenagers, ran a household where he and BOGGS furnished, supplied and/or distributed alcohol and illicit drugs to under age teens or young adults such as KASEY. Defendants DOMINGOS and BOGGS also encouraged and promoted inhalant abuse and provided an environment where they enabled teens and young adults to consume lethal substances like difluoroethane. Because of Defendants' combined wrongful conduct, KASEY was seduced into inhaling the toxic substances contained in the 3M Dust Remover. Defendants wrongful conduct is compounded by the fact that they encouraged KASEY to use a hot tub while she was under the influence of difluoroethane, and enticed her to keep consuming this product while highly impaired. As a consequence, KASEY drowned while under the influence of the toxic substance, and died two days later.

4.     At all relevant times herein mentioned, Defendants 3M COMPANY and WALMART were aware that the 3M Dust Remover was commonly and dangerously abused by teenagers. Despite this knowledge, Defendants failed to utilize a feasible alternative formulation capable of deterring consumption of the product as an inhalant; and/or failed to provide adequate warning of the lethal consequences associated with misuse of the product.

5.     As a result of the combined wrongful acts of Defendants, and each one of them, who, with a conscious indifference for the consequences of their acts, acted solely and/or in combination in the manner hereinafter alleged to cause the death of KASEY EASLEY.

**II.     PARTIES**

**A.     Plaintiffs**

6.     Plaintiff JOSEPH EASLEY is, and at all times herein mentioned was, a loving and devoted father to the decedent KASEY JO EASLEY. Decedent was, at all relevant times prior to her death, a dedicated and loving daughter. Plaintiff JOSEPH EASLEY brings this action as a surviving parent. He is also the administrator of the KASEY JO EASLEY

---

1  Estate and, as such, he is lawfully entitled to pursue all claims and causes of action for

2  damage, loss or destruction of the assets of the estate pursuant to Code of Civ. Proc. § 377.30.

3       7.    Plaintiff JOSEPH EASLEY is, and at all relevant times herein mentioned was,

4  an individual residing in the City of San Jose, County of Santa Clara, State of California.

5       8.    Plaintiff MARY EASLEY is, and at all times herein mentioned was, a loving

6  and devoted mother to the decedent KASEY JO EASLEY.  Decedent was, at all relevant

7  times prior to her death, a dedicated and loving daughter.  Plaintiff MARY EASLEY brings

8  this action as a surviving parent.

9       9.    Plaintiff MARY EASLEY is, and at all times herein mentioned was, an

10  individual residing in the City of San Jose, County of Santa Clara, State of California.

11      **B.**    **Defendants**

12      10.    Plaintiffs are informed and believe, and thereon allege, that Defendant 3M

13  COMPANY is and at all times herein mentioned was, a corporation, association, partnership,

14  joint venture, and/or sole proprietorship organized and existing under the laws of the State of

15  Delaware and/or maintaining its principal place of business in St. Paul, Minnesota and doing

16  business in the County of Monterey.

17      11.    By its own admission, 3M COMPANY is a diversified technology company

18  with presence in the following markets: consumer and office; display and graphics; electro

19  and communications; health care; industrial and transportation; and safety, security and

20  protection services.  The company sells products in nearly 200 countries, it has more than

21  69,000 employees, and its worldwide sales is $22.9 billion.  At all times herein mentioned,

22  Plaintiffs are informed and believe that Defendant 3M designed, manufactured, distributed,

23  marketed, promoted, advertised, sold, supplied tested and/or inspected the product known as

24  3M Dust Remover.

25      12.    Plaintiffs are informed and believe, and thereon allege, that Defendant

26  WALMART STORES, INC. ("WALMART") is, and at all times herein mentioned was, a

27  corporation, association, partnership, joint venture, and/or sole proprietorship organized and

28  existing under the laws of the State of Delaware and/or maintaining its principle place of

1   business in Bentonville, Arkansas, State of California and doing business in the County of
2   Monterey.

3       13.    WALMART is the world's largest retailer. At all times herein mentioned,
4   Plaintiffs are informed and believe that Defendant WALMART marketed, distributed and/or
5   sold the 3M Dust Remover product referenced above. Plaintiffs are informed and believe, and
6   therein allege, that the Decedent, KASEY, purchased the 3M Dust Remover product from the
7   WALMART retail outlet located in Gilroy, California.

8       14.    Plaintiffs are informed and believe, and thereon allege, that Defendant
9   MICHAEL DOMINGOS ("DOMINGOS") is an individual who was the owner of the house
10  located at 22552 Indian Springs Road, in the City of Salinas County of Monterey, where this
11  tragic incident took place. Plaintiffs are informed and believe, and therein allege that
12  DOMINGOS is a resident of Monterey County, California.

13      15.    At all relevant times, DOMINGOS ran a house of ill repute where he furnished,
14  supplied and/or distributed alcohol and illicit drugs such as ecstacy to under age teens or
15  young adults for the purpose of recruiting them to have sex with DOMINGOS. In 1999,
16  DOMINGOS was charged by the County of Monterey District Attorney's Office for supplying
17  drugs to minors and for 13 counts of child molestation and other related charges. Plaintiffs
18  are informed and believe, and therein allege, that the charges were thereafter dismissed, in
19  return for DOMINGOS pleading no contest to a violation of Health & Safety Code §11361A
20  (Employment of a minor to sell or carry marijuana).

21      16.    Plaintiffs are informed and believe, and thereon allege, that Defendant
22  CHRISTOPHER BOGGS ("BOGGS") is an individual residing in the City and County of San
23  Diego, State of California. At all times herein mentioned, BOGGS lived with DOMINGOS
24  at the house located at 22552 Indian Springs Road, in the City of Salinas, County of
25  Monterey, where this tragic incident took place.

26      17.    Plaintiffs are informed and believe, and thereon, allege, that Defendant
27  MATTHEW YORK ("YORK") is an individual residing in the County of Monterey,
28  California.

C.    **Other Defendants**

18.    The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants DOES 1 through 100 are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiffs further allege that each said fictitious Defendant is in some manner responsible for the acts and occurrences hereinafter set forth.  Plaintiffs will amend this Complaint to show the true names and capacities of these DOE Defendants when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible.

III.    **JURISDICTION AND VENUE**

19.    Defendants are subject to the jurisdiction of this Court by virtue of their business dealings and transactions in California, by having caused injuries through their acts and omissions within the County of Monterey and throughout the State of California.

20.    Venue is proper in this County as Defendants are located and/or perform business in this County, and a substantial part of the events, acts, omissions and transactions complained of herein occurred in this County.

21.    Defendants have sufficient minimum contacts with California, are citizens of California or otherwise purposefully avail themselves of benefits from California or do business in California so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

22.    The amount in controversy exceeds the jurisdictional minimum of this Court.

IV.    **AGENCY, AIDING AND ABETTING**

23.    At all relevant times herein mentioned, Defendants 3M COMPANY and WALMART knew that the 3M Dust Remover was commonly abused by teenagers and young adults as an inhalant capable of producing psychoactive effects.  Despite this wide spread knowledge and awareness of the potential lethal consequences of foreseeable misuse of the product, Defendants 3M COMPANY and WALMART failed to use due care in designing, formulating, manufacturing, promoting, inspecting, supplying, distributing and/or selling the 3M Dust Remover so as to avoid foreseeable harm or injury to users of product, including

1  the failure to add a feasible alternative formulation to the product such as a "bittergent",
2  capable of deterring inhalant abuse.   Furthermore, Defendants 3M COMPANY and
3  WALMART entered into agreements with the intention of suppressing the dissemination of
4  information regarding the serious risks and dangers posed by foreseeable misuses of the
5  product as described above.

6       24.    At all relevant times herein mentioned, Defendants DOMINGOS, BOGGS and
7  YORK entered into agreements to supply, furnish and enable the consumption of illegal drugs
8  and toxic substances such as difluorethane to teenagers and young adults, including the
9  decedent, and provided an environment where the consumption of these unlawful substances
10 was encouraged.

11      25.    At all relevant times herein mentioned, each of the Defendants was an agent,
12 employee, servant, partner, alter ego, and/or joint venturer of each of its/his/her co-
13 Defendants, and was at all times acting within the course and scope of said agency,
14 employment, service, partnership, conspiracy, alter ego status, and/or joint venture.

15      26.    Defendants entered into an agreement with the other Defendants and third
16 parties to pursue, and knowingly pursued, the common course of conduct to commit or
17 participate in the commission of all or part of the unlawful acts, tortious acts, plans, schemes,
18 transactions alleged herein, including but not limited to: failure to use due care in designing,
19 formulating, manufacturing, promoting, inspecting, supplying, distributing and/or selling the
20 3M Dust Remover so as to avoid foreseeable misuses of this product; suppressing and/or
21 failure to cause the dissemination of information regarding the serious risks and dangers posed
22 by the foreseeable misuses of the 3M Dust Remover; and supplying, furnishing and providing
23 an environment where the consumption of illegal drugs and toxic substances such as the 3M
24 Dust Remover took place.

25      27.    The liability of each Defendant arises from the fact that each committed and
26 engaged in a conspiracy to accomplish the commission of all or part of the unlawful and
27 / / /
28 / / /

---

1  tortious conduct alleged herein; and intentionally, knowingly, fraudulently and without legal

2  justification or excuse, engaged in the conduct herein alleged.

3      28.    At all pertinent times, Defendants acted through their duly authorized agents,

4  servants, and employees who were then acting in the course and scope of their employment,

5  and in furtherance of the business of said Defendants, with the knowledge, ratification and

6  consent of their officers, directors and managing agents.

7      29.    Defendants, and their predecessors and/or successors in interest did business

8  in the State of California, County of Monterey; made contracts to be performed in whole or

9  in part in California; and manufactured, tested, sold, offered for sale, supplied or materially

10  participated with others in placing the 3M Dust Remover into the stream of commerce, which

11  the Defendants knew to be dangerous and hazardous and which the Defendants knew would

12  be substantially certain to cause injury to the general public, who would foreseeably misuse

13  the product for its intoxicating effects.

14      30.    Defendants, and their predecessors and successors in interest, performed such

15  acts as were intended to and did result in the sale and distribution of the 3M Dust Remover

16  in the State of California, and its use and consumption by the decedent KASEY JO EASLEY.

17  **V.   GENERAL ALLEGATIONS**

18      **A.   Defendants Manufactured, Distributed, Promoted and Sold a Dangerous**

19         **Product**

20      31.    Difluoroethane, also known as R-152A, is a chemical compound that is mainly

21  used for refrigeration and as an aerosol propellant. It is most commonly found in electronic

22  cleaning products and many consumer aerosol products.

23      32.    The abuse of aerosols and other common household products such as air

24  fresheners, spray paint, gasoline, and glue has become a widespread, especially among

25  teenagers and young adults because these types of products are readily available and

26  inexpensive as a means of producing a mind-altering "high" similar to alcohol intoxication.

27  / / /

28  / / /

---

1  What is largely unknown, unappreciated and under-reported, is that inhalant abuse can
2  produce sudden, deadly consequences.

3      33.    A form of inhalant abuse called "dusting" involves inhaling compressed gas
4  from aerosol cans like computer dusting products.  Often, the user is under the false
5  impression that these products contain air and that what they are inhaling is compressed air
6  that poses no harm to the human body.  Despite misconceptions, however, computer dust
7  cleaning products, such as the 3M Dust Remover, do not contain compressed air; they contain
8  compressed gas.  Chemicals such as difluoroethane are used to propel the blast of air that
9  cleans. These propellants, when inhaled, produce a euphoric high and dizziness because they
10  go directly to the brain.  The experience is similar to being drunk, users often feel happy and
11  lack inhibitions. Common effects also include dizziness, drowsiness and even hallucinations.

12      34.    Abusing these substances can lead to nausea, vomiting, black-outs, heart
13  problems, accidents and death.  Dusting fills the lungs and restricts good air from entering,
14  and the lack of oxygen can cause the brain and heart to shut down.  Fatalities can occur
15  because: (1) the hydrocarbons contained in the product can cause heart arrhythmia that leads
16  to cardiac arrest; or (2) inhaling the substance can displace the oxygen in the user's lungs,
17  causing asphyxiation.  In essence, the user can suffocate without knowing.

18      35.    Inhalant abuse is perhaps more dangerous than illegal drugs because unlike
19  overdosing, which occurs at a certain level, "dusting" can kill with any amount.  It is
20  estimated that about 22 percent of those who died as a result of inhalant abuse die upon first
21  use.

22      36.    In an attempt to discourage the dangerous practice of inhalant abuse,
23  manufacturers have developed a new formulation for dust removers and similar products, by
24  incorporating an additive called a "bitterer" or "bittergent" which makes the contents of the
25  product extremely unpalatable to those who attempt to inhale them.

26      37.    Until recently, the 3M Dust Remover was flying off the shelves because, unlike
27  other similar products, it did not contain a "bittergent", or other similar additive to prevent
28  inhalation; as a result, the product was earmarked for purchase by teenagers and young adults

---

**COMPLAINT**                                                                    8

1  at excessive quantities for consumption as an intoxicating substance, without regard for its

2  serious lethal consequences.



Clean Safe
Dust Remover

3M Dust
Remover

14      38.    Based upon the serious risk presented by the abuse of inhalants, the California

15  legislature has outlawed the use of inhalants by minors.  California Health and Safety Code

16  States as follows:

The Legislature finds and declares all of the following:

(a) The Legislature has established various drug- and alcohol-related programs which provide for education, prevention, intervention, treatment, or enforcement.

(b) The Legislature has classified certain substances as controlled substances and has defined the lawful and unlawful use of controlled substances which are commonly referred to as, but not limited to, anabolic steroids, marijuana, and cocaine.

(c) The Legislature has classified certain substances as imitation controlled substances which are commonly referred to as, but not limited to, designer drugs.

(d) The Legislature has determined that the possession with the intent to be under the influence, or being under the influence of toluene, or any substance or material containing toluene, or any substance with similar toxic qualities, is unlawful.  Some substances or materials containing toluene, or substances with similar toxic qualities are commonly referred to, but not limited to, **inhalants** such as cement, glue, and paint thinner. . .. (Emphasis supplied.)

28  / / /

1    39.    Similarly, Penal Code Section 380(a) outlaws the use of toluene, substance that

2 is similar to difluoroethane and commonly abused by teenagers and young adults.

(a)Every person who sells, dispenses or distributes toluene, or any substance or material containing toluene, to any person who is less than 18 years of age shall be guilty of a misdemeanor, and upon conviction shall be fined in a sum of not less than one thousand dollars ($1,000), nor more than two thousand five hundred dollars ($2,500), or by imprisonment for not less than six months nor more than one year.

(b) The court shall order the suspension of the business license, for a period of one year, of a person who knowingly violates any of the provisions of this section after having been previously convicted of a violation of this section unless the owner of such business license can demonstrate a good faith attempt to prevent illegal sales or deliveries by employees. The provisions of this subdivision shall become operative on July 1, 1980.

(c) The provisions of this section shall apply to, but are not limited to, the sale or distribution of glue, cement, dope, paint thinners, paint, and any combination of hydrocarbons either alone or in combination with any substance or material including, but not limited to, paint, paint thinners, shellac thinners, and solvents which, when inhaled, ingested or breathed, can cause a person to be under the influence of, or intoxicated from, any such combination of hydrocarbons. This section shall not prohibit the sale of gasoline or other motor vehicle fuels to persons less than 18 years of age.

(d) This section shall not apply to any glue or cement which has been certified by the State Department of Health Services as containing a substance which makes such glue or cement malodorous or causes such glue or cement to induce sneezing, nor shall this section apply where the glue or cement is sold, delivered, or given away simultaneously with or as part of a kit used for the construction of model airplanes, model boats, model automobiles, model trains, or other similar models or used for the assembly or creation of hobby craft items using such components as beads, tiles, tiffany glass, ceramics, clay, or other craft-related components.

**B.**    **Inhalant Abuse Has Been A Wide Spread Problem for Two Decades**

40.    Drug abuse experts have viewed inhalant abuse as a problem for more than 20 years. The Centers for disease control began tracking cases in 1995, and the problem has received a lot of public attention since then.

41.    1998, the U.S. Consumer Product Safety Commission, the Office of National Drug Control Policy and Deloris Jordan, author of Family First and mother of five (including basketball star Michael Jordan) launched a campaign against inhalant abuse. They introduced an educational video about inhalant abuse for parents, teachers and care givers.

///

42.    On March 2, 1999, The New York Times reported that five teen girls were killed in January in a car accident in Chester Heights, Pennsylvania.  The girls had been inhaling difluoroethane contained in a product called Duster II.

43.    The next day, on March 3, 1999, CBS News reported that inhalant abuse was rising, and it spotlighted the death of the five teens.

44.    In 2001, the Consumer Product Safety Commission published its Parents Guide to Preventing Inhalant Abuse.

45.    On March 20, 2002, the Alliance for Consumer Education launched its flagship program, the Inhalant Abuse Prevention program, at a press conference in Washington, D.C.

46.    On April 22, 2003, ABC Good Morning America reported that the JFK Center for Civil Rights was suing Lowes, Target and Home Depot for selling household products to children who could inhale them to get high.

47.    On June 1, 2004, CBS News with Dan Rather presented a report on inhalant abuse.

48.    In 2004, Partnership for a Drug Free America, reported abuse of inhalants by middle school children was up 44 percent in two years.

49.    In 2005, the National Institute on Drug Abuse, in its Drug Alert bulletin, said drug use was down, except for inhalant abuse which it described as "highly toxic" and growing.

50.    On July 26, 2005, the NBC Today show did a segment entirely on dusting called "Dusting is the new killer high for teens."

51.    On November 17, 2005, the makers of CleanSafe Dust Remover (IQ Products Company) published a Material Safety Data Sheet showing that their product used a "unique Bittergent Technology" to deter inhalant abuse.

52.    On March 21, 2006, Good Morning America presented a report on a fatal accident that was caused by dusting.

53.    In October 2006, the manufacturer of Dust-Off (Falcon Safety Products) announced that it had added a bittering agent to its product.

54.    On October 6, 2006, a driver high on 3M Dust Remover struck and killed a motorcyclist in Florida.

55.    In November 2006, a student crashed into a restaurant in Arkansas after inhaling the 3M Dust Remover.

56.    In January 2007, CBS News presented a report on inhalant abuse, including dusting.

57.    In March 2007, 3M COMPANY introduced its bittering agent, but not soon enough to have prevented the tragic death of KASEY.

C.    **The Incident**

58.    KASEY died on November 25, 2006. Just two days earlier on November 23, 2006, KASEY had a traditional Thanksgiving meal with her family at their home in San Jose. Unbeknownst to KASEY and her family, this would be the last meal that they would share together.

59.    Later that evening, KASEY was invited to the DOMINGOS/BOGGS residence. KASEY drove down to Salinas to meet two acquaintances, MATT YORK ("YORK") and BOGGS, whom she had met recently. While on her way to Salinas, she received a telephone call from BOGGS who asked her to buy "air." KASEY stopped by WALMART in Gilroy, and purchased four cans of 3M Dust Remover.

60.    KASEY knew to buy the 3M Dust Remover as opposed to other brands because on at least one prior occasion, KASEY was scolded by BOGGS for buying dust remover product which contained a "bittergent", an additive which prevents inhalant abuse.

61.    After purchasing the 3M Dust Remover from WALMART, KASEY met BOGGS and YORK at a local Chevron gas station in Salinas. After a quick stop at the gas station, they drove to the house shared by BOGGS and DOMINGOS and arrived there sometime between 10:30-10:45 p.m.

62.    Upon arriving at the house, KASEY and YORK engaged in a conversation with DOMINGOS, and shortly thereafter, they began inhaling the compressed gasses contained in the 3M Dust Remover. Despite the knowledge that KASEY was under the influence of

1 | difluoroethane and impaired, BOGGS, DOMINGOS and YORK enticed KASEY to use the

2 | hot tub located in the back of the residence in her fragile condition, all the while encouraging

3 | her to keep inhaling the 3M Dust Remover. In fact, BOGGS and YORK also got in the hot

4 | tub with KASEY and continued inhaling difluoroethane from the 3M Dust Remover

5 | themselves.

6 |      63.    BOGGS and YORK told the Monterey County Sherriff's office that at some

7 | point they left KASEY alone in the hot tub, and when they came back they found her laying

8 | face down in the water. Although KASEY was rushed to Salinas Valley Memorial Hospital,

9 | efforts to save her were unsuccessful and she was pronounced dead on November 25, 2006.

10 | **VI.**   **CAUSES OF ACTION**

11 | <b>FIRST CAUSE OF ACTION</b>

12 | <b>(Strict Liability Design Defect Against 3M COMPANY AND WALMART)</b>

13 |      As and for a First Cause of Action against Defendants, Plaintiffs are informed and

14 | believe, and thereon allege as follows:

15 |      64.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set

16 | forth in detail.

17 |      65.    At all times herein mentioned, Defendants were engaged in the business of

18 | research, licensing, designing, testing, manufacturing, producing, processing, assembling,

19 | formulating, inspecting, distributing, marketing, labeling, promoting, packaging, warning,

20 | advertising, selling and/or distributing the 3M Dust Remover in the State of California. At

21 | the time of use, the product was substantially the same as when it left Defendants' possession.

22 |      66.    At all relevant times herein mentioned, Defendants and each of them knew that

23 | the 3M Dust Remover was commonly misused and abused by adolescents and young adults

24 | who purchased the product for the sole purpose of inhaling the subject product to produce a

25 | euphoric "high". In fact, the 3M Dust Remover was flying off the shelves at WALMART

26 | because, unlike other similar products, the 3M Dust Remover did not contain a "bittergent"

27 | — an additive which adds a bitter smell and taste to the chemicals contained in the dust

28 |

1  remover making it unpalatable – thus preventing teenagers and young adults from misusing
2  or inhaling the contents of the product.

3      67.    At all times relevant, the 3M Dust Remover was misused and/or abused in a way
4  that was reasonably foreseeable to Defendants.

5      68.    Defendants knew or should have known that foreseeable misuses of the 3M
6  Dust Remover posed an increased risk of cardiovascular injury, brain injury and death; and
7  therefore, constituted a product which was foreseeably dangerous if misused.  Despite this
8  knowledge, Defendants failed to take any precautions to prevent known misuse and abuses
9  of the product.  Defendants intentionally proceeded with the manufacture, sale, promotion,
10 and/or distribution and marketing of 3M Dust Remover with actual or constructive knowledge
11 that persons would be exposed to serious risks of potential harm, in order to advance its own
12 pecuniary interests.

13     69.    Prior to the manufacture, promotion, sale and/or distribution of 3M Dust
14 Remover, Defendants knew that the product was defective and/or unsafe as previously
15 described, and knew that young people who foreseeably misused the 3M Dust Remover as an
16 inhalant would experience, and/or would be exposed to increased risk of severe physical
17 injuries, and/or death.  Further, Defendants, through its officers, directors and managing
18 agents, had notice and knowledge prior to the date of the promotion, sale or distribution of
19 said product to decedent, that the product was widely used by young adults such as the
20 decedent as an inhalant, and thus, presented a risk of increased risk of injury, harm, or sudden
21 death to persons exposed to the product.

22     70.    As a direct and legal cause of the Defendants' wrongful conduct herein above
23 set forth, KASEY died and Plaintiffs have suffered the injuries and damages herein alleged.

24     71.    By reason of the premises and of the wrongful death of their daughter KASEY,
25 Plaintiffs JOSEPH and MARY EASLEY suffered and continue to suffer loss of love,
26 companionship, comfort, affection, solace and the moral support of their daughter.

27 / / /
28 / / /

72.    By reason of the premises and of the wrongful death of their daughter KASEY, Plaintiffs have incurred and/or will incur funeral and burial expenses in an amount to be determined at trial.

73.    By reason of the wrongful death of their daughter KASEY, resulting from the wrongful acts and/or omissions of Defendants, and each of them, Plaintiffs hereby seek recovery of other such relief as may be just and provided for under Code of Civ. Proc. § 377.61.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Strict Liability Failure to Warn Against 3M COMPANY AND WALMART)

As and for a Second Cause of Action against Defendants, Plaintiffs are informed and believe, and thereon allege as follows:

74.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail herein.

75.    At all times herein mentioned, Defendants were engaged in the business of research, licensing, designing, testing, manufacturing, producing, processing, assembling, formulating, inspecting, distributing, marketing, labeling, promoting, packaging, warning, advertising, and/or distributing the 3M Dust Remover in the State of California.

76.    At all times relevant, the 3M Dust Remover was defective and/or unsafe at the time of its manufacture, development, production, formulation, processing, testing, inspection, endorsement, prescription, promotion, sale and/or distribution, in that, there was a serious risk of adverse health effects associated with the foreseeable misuse of this product as an inhalant drug.

77.    Defendant, through its officers, directors and managing agents, had prior notice and knowledge from several sources, prior to the date of the promotion, sale or distribution of said product to decedent that the product was widely misused by young adults such as the decedent as an inhalant drug, and thus presented a risk of increased harm to the consumer, / / /

---

1  including the decedent, and as such, persons exposed to 3M Dust Remover were unreasonably

2  subjected to risk of injury, harm, or sudden death.

3      78.    At all times herein mentioned, Defendants knew that the 3M Dust Remover was

4  to be used by consumers without inspection and/or knowledge of the increased risk of adverse

5  health effects associated with consumption of this product as an inhalant drug as set forth

6  herein. Moreover, KASEY neither knew, or had reason to know at the time of the use of 3M

7  Dust Remover, of the existence of the aforementioned side effects, deleterious health risks

8  and/or increased risk of health hazards or sudden death.

9      79.    Despite being aware of the wide spread and foreseeable misuse of the subject

10  product as an inhalant drug, Defendants failed to provide proper warning to consumers

11  regarding all possible adverse side effects associated with the use of 3M Dust Remover and

12  the severity of such adverse side effects, including the potential risk of cardiovascular injury,

13  brain injury and sudden death; and that any warnings given did not adequately reflect the

14  potential symptoms, scope of severity of the side effects or the increased risk of health hazards

15  and/or sudden death posed.

16      80.    The 3M Dust Remover was misused in a way that was reasonably foreseeable

17  to Defendants as KASEY, like many young adults, foreseeably misused the 3M Dust Remover

18  as an inhalant drug.

19      81.    As a result, KASEY sustained serious injuries resulting in her death, and

20  Plaintiffs suffered the injuries and damages alleged herein above.

21      82.    The lack of sufficient and/or adequate instructions or warnings was a substantial

22  factor in causing the death of KASEY and Plaintiffs' harm.

23              **THIRD CAUSE OF ACTION**

24          **(Negligence Against 3M COMPANY AND WALMART)**

25      As and for a Third Cause of Action against Defendants, Plaintiffs are informed and

26  believe, and thereon allege as follows:

27      83.    Plaintiffs hereby incorporates by reference all paragraphs above as if fully set

28  forth in detail herein.

84.     At all times herein mentioned, Defendants had a duty to exercise reasonable care in the manufacture, design, testing, producing, processing, assembling, formulation, inspecting, researching, quality assurance, quality control, distributing, marketing, advertising, promoting, labeling, packaging, preparing for use, sales, recalling and/or adequately warning of the risks and dangers associated with foreseeable misuse of the 3M Dust Remover, including the duty to assure that the product did not cause users to be exposed to unreasonable harm or injury, and/or the increased risk of adverse, harmful and/or potentially sudden and fatal side effects.

85.     At all times herein mentioned, Defendants failed to exercise ordinary care and were negligent, careless, and/or reckless in the manufacture, design, production, formulation, processing, assembling, inspecting, distributing, marketing, advertising, promoting, labeling, packaging and/or introducing into commerce the 3M Dust Remover in that Defendants:

- Failed to use due care in designing, formulating and/or manufacturing the 3M Dust Remover so as to avoid the aforementioned adverse health risks to individuals using the product as an inhalant, including failure to add a bittering agent;

- Failed to use due care and adequately label and/or provide proper warnings regarding all possible adverse side effects associated with the foreseeable misuse of the 3M Dust Remover as an inhalant including the potentially sudden, fatal adverse health effects; and/or the warnings given did not adequately represent the scope of potentially harmful and/or fatal side effects of the product.

86.     As a legal result of the wrongful acts and omissions of Defendants, KASEY sustained severe injuries resulting in her death, and Plaintiffs suffered the injuries and damages alleged herein above.

WHEREFORE, Plaintiffs pray for relief as set forth below.

///
///
///
///

## FOURTH CAUSE OF ACTION

### (Negligence Against MICHAEL DOMINGOS, CHRISTOPHER BOGGS and MATTHEW YORK)

As and for a Fourth Cause of Action against Defendants, Plaintiffs are informed and believe, and thereon allege as follows:

87.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail herein.

88.    At all times relevant herein mentioned, Defendants MICHAEL DOMINGOS AND CHRISTOPHER BOGGS ran a house of ill repute where they furnished, supplied and/or distributed alcohol and illicit drugs such as ecstacy to under age teens and young adults for the purpose of recruiting them to have sex with DOMINGOS. On prior occasions, Defendants and/or each of them, instructed KASEY to purchase the 3M Dust Remover and bring it over to their house for the purpose of inhaling the product to produce a euphoric "high", and on at least one prior occasion when KASEY brought the wrong product which contained a "bittergent", she was scolded by Defendants.

89.    On the night of the incident, Defendants DOMINGOS, BOGGS and YORK invited KASEY to the 22552 Indian Springs Road residence and instructed her to purchase the 3M Dust Remover and bring it with her for the purpose of getting "high". At all relevant times herein mentioned, Defendants intended and planned on inhaling the subject product with KASEY at their residence in Salinas, California, and in the hot tub located in the backyard of the same residence.

90.    At all relevant times herein mentioned, Defendants knew or should have known aware that KASEY would use the hot tub while impaired. In fact, Defendants enticed KASEY to use the hot tub in a highly intoxicated condition and/or continued to encourage and cause her to consume diflourathane while in the hot tub. Defendants BOGGS and/or YORK were in the hot tub with KASEY prior to her death. As a legal result of Defendants' wrongful conduct, KASEY sustained serious injuries resulting in her death.

/ / /

91.    By reason of the premises and of the wrongful death of their daughter KASEY, Plaintiffs JOSEPH and MARY EASLEY suffered and continue to suffer loss of love, companionship, comfort, affection, solace and the moral support of their daughter.

92.    By reason of the premises and of the wrongful death of their daughter KASEY, Plaintiffs have incurred and will incur funeral and burial expenses, and related medical expenses, in an amount to be determined at trial.

93.    By reason of the wrongful death of their daughter KASEY, resulting from the wrongful acts and/or omissions of Defendants, and each of them, Plaintiffs hereby seek recovery of other such relief as may be just and provided for under Code of Civ. Proc. § 377.61.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Survival Cause of Action And Request For Punitive Damages On Behalf of the Estate of KASEY JO EASLEY Against All Defendants)

As and for a Fifth Cause of Action against Defendants, Plaintiffs are informed and believe, and thereon allege as follows:

94.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail herein.

95.    On or about November 23 through November 25, 2006, and prior to her death, the foregoing cause of action arose in KASEY JO EASLEY'S favor. Since her death, KASEY'S father JOSEPH EASLEY opened an estate and has been appointed as the administrator of the KASEY JO EASLEY estate. Thus, he is legally authorized to pursue any and all legal claims for damages related thereto, and to recover damages for expenses incurred related to medical and/or emergency services related to this accident.

96.    By reason of the aforesaid premises, on or about November 25, 2006, and immediately prior to her death, several items of personal property belonging to KASEY were damaged, lost or destroyed. Said property and/or economic losses occurred as a direct and legal result of Defendants' wrongful conduct herein above set forth.

---

1   97.   Furthermore, by reason of the aforesaid premises, on or about November 23,
2   2006 through November 25, 2006, and prior to her death, KASEY incurred substantial
3   expenses for emergency and/or medical services rendered in connection with this incident.
4   KASEY was treated at Salinas Valley Memorial Hospital for the injuries she sustained in the
5   subject incident for almost two days prior to her death. The said medical expenses occurred
6   as a direct and legal result of Defendants' wrongful conduct herein above set forth.

7   98.   At all times relevant herein mentioned, Defendants 3M COMPANY and
8   WALMART and DOES 1 through 100 Defendants, individually and/or in combination, by
9   act or omission, demonstrated a wanton and/or reckless indifference for the manufacture,
10  design, testing, producing, processing, assembling, formulation, inspecting, researching,
11  quality assurance, quality control, distributing, marketing, advertising, promoting, labeling,
12  packaging, preparing for use, sales, recalling and/or adequately warning of the risks and
13  dangers of 3M Dust Remover, including the duty to assure that the product did not cause users
14  to be exposed to unreasonable harm or injury, and/or the increased risk of adverse, harmful
15  and/or potentially fatal side effects.

16  99.   At all times relevant herein mentioned, Defendants were aware that young
17  adults such as KASEY commonly purchased this product for the purposes of using it as an
18  inhalant drug. Despite being aware of the wide spread misuse, Defendants failed to design,
19  formulate and/or manufacture 3M Dust Remover so as to avoid the aforementioned adverse
20  health risks to individuals using the product as an inhalant drug, including adding an available
21  bitterent to the product to prevent misuse of the product as an inhalant drug. Furthermore,
22  Defendants failed to adequately label and/or provide proper or effective warnings regarding
23  all possible adverse side effects associated with the foreseeable misuse of the 3M Dust
24  Remover as an inhalant including sudden fatal adverse health effects.

25  100.  Furthermore, at all times relevant herein mentioned, Defendants MICHAEL
26  DOMINGOS and CHRISTOPHER BOGGS ran a house of ill repute where they furnished,
27  supplied and/or distributed alcohol and illicit drugs such as ecstacy to under age teens or
28  young adults for the purpose of recruiting them to have sex with DOMINGOS. On the

1 evening of the incident, and on prior occasions, Defendants DOMINGOS, BOGGS and
2 YORK educated and/or instructed KASEY on how to use and/or purchase the 3M Dust
3 Remover as an inhalant drug. At all times relevant herein mentioned, Defendants were aware
4 of the serious risk of danger including risk of potential death associated with inhaling the said
5 product, yet despite knowing the foreseeable risk and danger associated with such an act and
6 conduct, Defendants enticed, encouraged and caused KASEY to misuse the said product and,
7 furthermore, caused her to use the hot tub in while under the influence of difluorathane, and
8 then left her unsupervised and in a highly impaired condition alone in the hot tub, causing her
9 to sustain serious injuries resulting in her death

10    101.    In doing the acts herein alleged, Defendants, and each of them, acted willfully,
11 despicably, wantonly, with oppression, fraud, and/or malice, and with a conscious disregard
12 of the rights and safety of others, such that Plaintiffs request that the trier of fact, in the
13 exercise of its sound discretion, award Plaintiffs additional damages for the sake of example
14 and sufficient to punish said Defendants for their despicable conduct, in an amount reasonably
15 related to Plaintiffs' actual damages and Defendants' wealth, yet sufficiently large enough to
16 be an example to others and to deter Defendants and others from engaging in similar conduct
17 in the future.

18    WHEREFORE, Plaintiffs pray for relief as set forth below.

19                                **PRAYER FOR RELIEF**

20    1.    For compensatory and general damages in a sum in excess of the jurisdictional
21          minimum of this Court and according to proof;

22    2.    For economic losses, in an amount according to proof at trial;

23    3.    For interest upon any judgment entered as provided by law;

24    4.    For punitive and exemplary damages according to proof;

25    5.    For damages to personal property according to proof;

26    6.    For costs of suit incurred herein; and

27    7.    Such other, further and different relief which the Court deems necessary, just
28          and proper.

1   DATED: May 30, 2007                    **COTCHETT, PITRE & McCARTHY**

2

3                                          By
                                           FRANK M. PITRE
4                                                Attorneys for Plaintiff Joseph and Mary Easley

5

6                                          **JURY DEMAND**

7          Plaintiffs demand trial by jury on all issues so triable.

8

9   DATED: May 30, 2007                    **COTCHETT, PITRE & McCARTHY**

10

11                                         By
                                           FRANK M. PITRE
12                                               Attorneys for Plaintiff Joseph and Mary Easley

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 2

FW-003

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

MATTHEW YORK
1854 SAN MIGUEL CANYON ROAD
SALINAS, CA 93907
TELEPHONE NO.: 831-320-9984    FAX NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Defendant in Pro Per

**FOR COURT USE ONLY**

**FILED**

JUN 27 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
J. NICHOLSON    DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:     Monterey County Superior Court
                     1200 Aguajito Road
CITY AND ZIP CODE:   Monterey, CA 93940
BRANCH NAME:

PLAINTIFF/PETITIONER: JOSEPH EASLY and MARY EASLY et al.
DEFENDANT/RESPONDENT: 3M COMPANY et al.

CASE NUMBER: M84877

## ORDER ON APPLICATION FOR WAIVER OF COURT FEES AND COSTS

1. The application was filed on (date): 6/26/07
2. The application was filed by (name): MATTHEW YORK     [ ] A previous order was issued on (date):
3. [X] IT IS ORDERED that the application is granted     [ ] in whole     [ ] in part (complete line 4 below).

   a. [ ] **No payments.** Payment of all the fees and costs listed in California Rules of Court, rule 3.61. is waived.

   b. [ ] The applicant shall pay all the fees and costs listed in California Rules of Court, rule 3.61, EXCEPT the following:
      (1) [ ] Filing papers.
      (2) [ ] Certification and copying.
      (3) [ ] Issuing process and certification.
      (4) [ ] Transmittal of papers.
      (5) [ ] Court-appointed interpreter.
      (6) [ ] Sheriff and marshal fees.
      (7) [ ] Reporter's fees* (valid for 60 days).
      (8) [ ] Telephone appearance (Gov. Code, § 68070.1 (c))
      (9) [ ] Other (specify code section):
      *Reporter's fees are per diem pursuant to Code Civ. Proc., §§ 269, 274c, and Gov. Code, §§ 69947, 69948, and 72195.

   c. **Method of payment.** The applicant shall pay all the fees and costs when charged, EXCEPT as follows:
      (1) [ ] Pay (specify): _____ percent.  (2) [ ] Pay: $ _____ per month or more until the balance is paid.

   d. The clerk of the court, county financial officer, or appropriate county officer is authorized to require the applicant to appear before and be examined by the court no sooner than four months from the date of this order, and not more than once in any four-month period. [ ] The applicant is ordered to appear in this court as follows for review of his or her financial status:
      Date: _____ Time: _____ Dept.: _____ Div.: _____ Room: _____

   e. [ ] The clerk is directed to mail a copy of this order only to the applicant's attorney or to the applicant if not represented.

   f. All unpaid fees and costs shall be deemed to be taxable costs if the applicant is entitled to costs and shall be a lien on any judgment recovered by the applicant and shall be paid directly to the clerk by the judgment debtor upon such recovery.

4. [X] IT IS ORDERED that the application is denied     [X] in whole     [ ] in part for the following reasons (see Cal. Rules of Court, rules 3.50–3.63):

   a. [X] Monthly household income exceeds guidelines (Gov. Code, § 68511.3(a)(6)(B); form FW-001-INFO).

   b. [ ] Other (Complete line 4b on page 2).

   c. The applicant shall pay any fees and costs due in this action within 10 days from the date of service of this order or any paper filed by the applicant with the clerk will be of no effect.

   d. The clerk is directed to mail a copy of this order to all parties who have appeared in this action.

5. [ ] IT IS ORDERED that a hearing be held.

   a. The substantial evidentiary conflict to be resolved by the hearing is (specify):

   b. The applicant should appear in this court at the following hearing to help resolve the conflict:
      Date: _____ Time: _____ Dept.: _____ Div.: _____ Room: _____

   c. The address of the court is (specify):
      [ ] Same as above

   d. The clerk is directed to mail a copy of this order only to the applicant's attorney or to the applicant if not represented.

**NOTICE:** If item 3d or item 5b is filled in and the applicant does not attend the hearing, the court may revoke or change the order or deny the application without considering information the applicant wants the court to consider.

**WARNING:** The applicant must immediately tell the court if he or she becomes able to pay court fees or costs during this action. The applicant may be ordered to appear in court and answer questions about his or her ability to pay fees or costs.

Date: 6/27/07

KAY KINGSLEY
(JUDICIAL OFFICER)

_____ Clerk, by _____, Deputy
(Clerk may GRANT in full a nondiscretionary fee waiver, see Cal. Rule of Court, rules 3.56.)

Form Adopted for Mandatory Use
Judicial Council of California
FW-003 [Rev. January 1, 2007]

**ORDER ON APPLICATION FOR WAIVER OF COURT FEES AND COSTS (Fee Waiver)**

Page 1 of 2

Government Code, § 68511.3,
Cal. Rules of Court, rules 3.50–3.63
www.courtinfo.ca.gov

| PLAINTIFF/PETITIONER (Name): | | FW-003 |
| --- | --- | --- |
| DEFENDANT/RESPONDENT (Name): | CASE NUMBER: | |

4b ☐ Application is denied in whole or in part *(specify reasons):*

As the Monthly household income exceeds guidelines pursuant to GC685.113(a)(6)(b)

Your Answer fee of $320.00 must be received within 10 days or the court will order your answer set aside.

## CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this cause and that a true copy of the foregoing was mailed first class, postage prepaid, in a sealed envelope addressed as shown below, and that the mailing of the foregoing and execution of this certificate occurred at *(place):* Salinas , California, on *(date):* 7-2-07

LISA M. GALDOS

Clerk, by _____ , Deputy

J. NICHOLSON

---

| (SEAL) | |
| --- | --- |

## CLERK'S CERTIFICATE

I certify that the foregoing is a true and correct copy of the original on file in my office.

Date: _____

Clerk, by _____ , Deputy

**ORDER ON APPLICATION FOR WAIVER OF
COURT FEES AND COSTS (Fee Waiver)**

PLD-PI-003

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS)*: | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS)*:
MATTHEW YORK

1854 San Miguel Canyon Road

Salinas, CA 93907

TELEPHONE NO.: 831-320-9989

ATTORNEY FOR *(NAME)*: Defendant In Pro Per

insert name of court, judicial district or branch court, if any, and post office and street address:
California Superior Court, Monterey County
1200 Aguajito Road

Monterey, CA 93940
Monterey

PLAINTIFF: JOSEPH EASLEY and MARY EASLEY et al.

DEFENDANT: 3M COMPANY; WALMART STORES, INC.; MICHEAL DOMINGOS; CHRISTOPHER BOGGS, et al.

**FILED**

JUN 2 6 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
DEPUTY

**MARY C. GILBERT**

---

**ANSWER—Personal Injury, Property Damage, Wrongful Death**
[x] COMPLAINT OF *(name)*: Joseph and Mary Easley
[ ] CROSS-COMPLAINT OF *(name)*:

CASE NUMBER:

M 84877

1. This pleading, including attachments and exhibits, consists of the following number of pages: 3

DEFENDANT OR CROSS-DEFENDANT *(name)*: MATTHEW YORK

2. [X] Generally **denies** each allegation of the **unverified** complaint or cross-complaint.

3. a. [ ] DENIES each allegation of the following numbered paragraphs:

   b. [ ] ADMITS each allegation of the following numbered paragraphs:

   c. [ ] DENIES, ON INFORMATION AND BELIEF, each allegation of the following numbered paragraphs:

   d. [ ] DENIES, BECAUSE OF LACK OF SUFFICIENT INFORMATION OR BELIEF TO ANSWER, each allegation of the following numbered paragraphs:

   e. [ ] ADMITS the following allegations and generally denies all other allegations:

---

Form Approved for Optional Use
Judicial Council of California
PLD-PI-003 [Rev. January 1, 2007]

**ANSWER—Personal Injury, Property Damage, Wrongful Death**

Page 1 of 2
Code of Civil Procedure, § 425.12

Legal
Solutions
Plus

| SHORT TITLE: Easley vs. 3M Company et al | PLD-PI-003 |
|---|---|
| | CASE NUMBER:<br>M 84877 |

### ANSWER—Personal Injury, Property Damage, Wrongful Death

f. ☐ DENIES the following allegations and admits all other allegations:

g. ☐ Other (specify):

**AFFIRMATIVELY ALLEGES AS A DEFENSE**

4. ☒ The comparative fault of plaintiff or cross-complainant (name): Kasey Jo Easley
as follows:

Engaging in behavior in a negligent way that caused her death.

5. ☐ The expiration of the Statute of Limitations as follows:

6. ☒ Other (specify): Negligent supervision by Joseph Easley and Mary Easley of
Kasey Jo Easley;
The complaint fails to state a cause of action against this defendant.

7. DEFENDANT OR CROSS-DEFENDANT PRAYS
For costs of suit and that plaintiff or cross-complainant take nothing.
☒ Other (specify): For such further relief as the court deems proper.

MATTHEW YORK
_____
(Type or print name)

_____
(Signature of party or attorney)

## PROOF OF SERVICE

I am employed in the County of Monterey, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 40 Bonifacio Plaza, Monterey, CA 93940.

On the date set forth below, I served the following documents:

Answer

On the interested parties to said action by the following means:

( XX )  (BY MAIL)  By placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing on that date following ordinary business practices, in the United States Mail at the offices of Lawyers on Duty, Monterey, CA, addressed as shown below. I am readily familiar with this business's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and in the ordinary course of business, correspondence would be deposited with the U.S. Postal Service the same day it was placed for collection and processing.

( )  (BY HAND DELIVERY)  By causing a true copy thereof, enclosed in a sealed envelope, to be delivered by hand to the address(es) shown below.

( )  (BY FACSIMILE TRANSMISSION)  By transmitting a true copy thereof by facsimile transmission from facsimile number (831) 646-1800 to the interested parties to said action at the facsimile number(s) shown below.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this proof of service was executed on June 26, 2007 at Monterey, California.

David S. Mullally

NAME(S) AND ADDRESS(ES) OR FAX NUMBER(S) OF EACH PARTY SERVED:

COTCHETT, PITRE & McCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Gavin & Cunningham
1530 The Alameda, Suite 210
San Jose, CA 95126

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
FRANK M. PITRE  (SBN #100077)
Cotchett, Pitre & McCarthy
840 Malcolm Road, #200
Burlingame, CA  94010
TELEPHONE NO.:  650/697-6000    FAX NO. *(Optional)*:  650/697-0577
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:   JOSEPH EASLEY and MARY EASLEY, etc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Monterey
STREET ADDRESS:  1200 Aguajito Road
MAILING ADDRESS:  1200 Aguajito Road
CITY AND ZIP CODE:  Monterey, CA  93940
BRANCH NAME:

**FOR COURT USE ONLY**

# FILED

JUN 0 4 2007

ISA M. GALDOS
CLERK OF THE SUPERIOR COURT
MARY C. GILBERT        DEPUTY

PLAINTIFF/PETITIONER:  JOSEPH EASLEY and MARY EASLEY, etc.

DEFENDANT/RESPONDENT:  3M COMPANY, et al.,

CASE NUMBER:

M84877

## PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a. [✓]  summons
    b. [✓]  complaint
    c. [✓]  Alternative Dispute Resolution (ADR) package
    d. [✓]  Civil Case Cover Sheet *(served in complex cases only)*
    e. [ ]  cross-complaint
    f. [✓]  other *(specify documents)*:   Case Management Notice

# BY FAX

3.  a.  Party served *(specify name of party as shown on documents served)*:
        Michael Domingos

    b. [ ]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4.  Address where the party was served:
    1199 Pacific Highway, #2302, San Diego, CA  92101
5.  I served the party *(check proper box)*
    a. [✓]  by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:  6/1/07        (2) at *(time)*:   3:30 PM
    b. [ ]  by substituted service.  On *(date)*:            at *(time)*:            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

        (1) [ ]  (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him or her of the general nature of the papers.

        (2) [ ]  (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

        (3) [ ]  (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

        (4) [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20).  I mailed the documents on *(date)*:            from *(city)*:            or [ ]  a declaration of mailing is attached.

        (5) [ ]  I attach a declaration of diligence stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: JOSEPH EASLEY and MARY EASLEY, etc. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: 3M COMPANY, et al., | M84877 |

5.  c. ☐  by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date)*:           (2) from *(city)*:

    (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐  to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

  d. ☐  by other means *(specify means of service and authorizing code section)*:

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑  as an individual defendant.
  b. ☐  as the person sued under the fictitious name of *(specify)*:
  c. ☐  as occupant.
  d. ☐  On behalf of *(specify)*:
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)          ☐ 415.46 (occupant)
                           ☐ other:

7.  Person who served papers
  a. Name:  Will Gager
  b. Address:  P.O. Box 2230, Morgan Hill, CA  95038
  c. Telephone number:  408/782-0163
  d. The fee for service was: $ 125.00
  e. I am:
    (1) ☐  not a registered California process server.
    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑  a registered California process server:
      (i) ☐ owner  ☐ employee  ☑ independent contractor.
      (ii) Registration No.:  859
      (iii) County:  Santa Clara

8.  ☑  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9.  ☐  I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  June 4, 2007

Will Gager
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▸ *Will Gager*
_____
(SIGNATURE)

POS-010 [Rev. January 1, 2007]         **PROOF OF SERVICE OF SUMMONS**         Page 2 of 2

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

FRANK M. PITRE  (SBN #100077)
Cotchett, Pitre & McCarthy
840 Malcolm Road, #200
Burlingame, CA 94010
  TELEPHONE NO.: 650/697-6000    FAX NO. *(Optional)*: 650/697-0577
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:  JOSEPH EASLEY and MARY EASLEY, etc.

**FILED**

JUN 0 4 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY
MARY C. GILBERT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Monterey
  STREET ADDRESS: 1200 Aguajito Road
  MAILING ADDRESS: 1200 Aguajito Road
  CITY AND ZIP CODE: Monterey, CA 93940
  BRANCH NAME:

| PLAINTIFF/PETITIONER:  JOSEPH EASLEY and MARY EASLEY, etc. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  3M COMPANY, et al., | M84877 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

**BY FAX**

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents)*:  Case Management Notice

3. a. Party served *(specify name of party as shown on documents served)*:
      Matthew York

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*

4. Address where the party was served:
   4 Geary Plaza, Seaside, CA 93955
5. I served the party *(check proper box)*
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 6/1/07    (2) at *(time)*: 2:20 PM
   b. ☐ by substituted service. On *(date)*:          at *(time)*:          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:          from *(city)*:          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: JOSEPH EASLEY and MARY EASLEY, etc. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: 3M COMPANY, et al., | M84877 |

5.   c. ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

      (1)  on *(date)*:             (2)  from *(city)*:

      (3) ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30.)

      (4) ☐   to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

   d. ☐   **by other means** *(specify means of service and authorizing code section)*:

      ☐   Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☑   as an individual defendant.
   b. ☐   as the person sued under the fictitious name of *(specify)*:
   c. ☐   as occupant.
   d. ☐   On behalf of *(specify)*:
      under the following Code of Civil Procedure section:

      ☐  416.10 (corporation)         ☐  415.95 (business organization, form unknown)
      ☐  416.20 (defunct corporation)     ☐  416.60 (minor)
      ☐  416.30 (joint stock company/association)  ☐  416.70 (ward or conservatee)
      ☐  416.40 (association or partnership)   ☐  416.90 (authorized person)
      ☐  416.50 (public entity)           ☐  415.46 (occupant)
                                    ☐  other:

7.   **Person who served papers**
   a.  Name:  Ken Edick
   b.  Address:  P.O. Box 2230, Morgan Hill, CA  95038
   c.  Telephone number:  408/782-0163
   d.  The fee for service was:  $ 105.00
   e.  I am:
      (1) ☐   not a registered California process server.
      (2) ☑   exempt from registration under Business and Professions Code section 22350(b).
      (3) ☐   a registered California process server:
         (i) ☐   owner  ☐  employee  ☐  independent contractor.
         (ii)   Registration No.:
         (iii)  County:

8. ☑   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      or

9. ☐   I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  June 4, 2007

Ken Edick                        ▸   *K. Edick*
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)               (SIGNATURE )

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY | Reserved for Clerk's File Stamp |
|---|---|
| Easley, Joseph et al.,<br>Plaintiff/Petitioner<br><br>vs.<br><br>3M Company et al,<br>Defendant/Respondent | **FILED**<br>MAY 3 1 2007<br>LISA M. GALDOS<br>CLERK OF THE SUPERIOR COURT<br>DEPUTY |
| **CASE MANAGEMENT NOTICE** | Case No. **M84877** |

**Case Management Conference Date:  December 27, 2007 at 9:00 a.m.**

1.  NOTICE is hereby given that a CASE MANAGEMENT STATEMENT shall be filed with the Court and served on all parties NO LATER than:  30 days before the above date of the initial CASE MANAGEMENT CONFERENCE.

2.  No party may stipulate to extend any of the dates set above.

3.  At the CASE MANAGEMENT CONFERENCE, it is expected that trial counsel for each party and each self-represented party shall attend and be fully prepared to participate effectively in the conference.

4.  On receipt of the CASE MANAGEMENT STATEMENT and at or before the CASE MANAGEMENT CONFERENCE the Court may make the following orders:

    a.  refer the matter to arbitration, the court-directed mediation program, or other alternative dispute resolution procedures;
    b.  identify the case as one which may be protracted and in need of special attention;
    c.  assign the case to a particular judge for all purposes:
    d.  assign a mandatory settlement conference and trial date;
    e.  make orders establishing discovery schedules and cut-offs, including expert witness disclosure and discovery;
    f.  make appropriate Trial Management Orders; and/or
    g.  make any other orders to achieve the interests of justice and the timely disposition of the case, including the setting of additional Status Conferences.

5.  It is the policy of this Court that all complaints and cross-complaints be filed and served, all challenges to the pleadings be heard, and the matter be at-issue no later than 180 days from the filing of the complaint.  It is the policy of this Court that all civil matters be resolved in no more than 12 to 24 months of the filing of the complaint.

6.  Failure to file the CASE MANAGEMENT STATEMENT, attend the CASE MANAGEMENT CONFERENCE and participate effectively, or comply with any CASE AND TRIAL MANAGEMENT RULES may result in sanction.

7.  It is the responsibility of the parties and/or their attorneys to be familiar with the Monterey County Case and Trial Management Policies and Rules and to comply therewith.

BY ORDER OF THE PRESIDING JUDGE

Date: May 31, 2007

By: _____

Deputy Clerk

Page 1 of 5

# Alternative Dispute Resolution
## OPTIONS FOR RESOLVING YOUR DISPUTE

**There Are Alternatives to Going to Trial**

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement.

**Advantages of ADR**

Here are some potential advantages of using ADR:

- **Save Time**: A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.
- **Save Money**: When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.
- **Increase Control over the Process and the Outcome**: In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.
- **Preserve Relationships**: ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.
- **Increase Satisfaction**: In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Improve Attorney-Client Relationships**: Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

**What Are the ADR Options?**

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

**Mediation**

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties. The Monterey County Superior Court offers a Court-Directed Mediation Program.

**Cases for Which Mediation May Be Appropriate**: Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**: Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. There-fore, it may not be a good choice if the parties have a history of abuse or victimization.

## Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. *Nonbinding arbitration* means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

**Cases for Which Arbitration May Be Appropriate**: Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**: If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

## Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**: Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**: Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

## Settlement Conference

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):

TELEPHONE NO.:
EMAIL ADDRESS (Optional):               FAX NO. (Optional)
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY**
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **Request to Vacate or Continue Initial Case Management Conference and Order** | Case Number: |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:          Time:          Dept.:          Div.:     Room:

---

▸ IF APPLICABLE, THIS REQUEST AND ORDER MUST BE FILED CONCURRENTLY WITH THE CASE MANAGEMENT STATEMENTS, WHICH ARE DUE NO LATER THAN 30 DAYS BEFORE THE INITIAL CASE MANAGEMENT CONFERENCE.

▸ PER LOCAL RULE 6.08(g), IF THE PARTIES DO NOT RECEIVE A SIGNED COPY OF THE ORDER GRANTING THE REQUEST, THEY MUST ATTEND THE CASE MANAGEMENT CONFERENCE.

---

Counsel and the parties certify that the initial Case Management Conference should be vacated or continued for the following reasons [circle one]:

1.  All parties have appeared and agree to engage in the below ADR program [check **an** one]:

    ❑ Court-Directed mediation          ❑ Private mediation
    ❑ Nonbinding judicial arbitration   ❑ Private arbitration          **THE**
    ❑ Other:

**PARTIES AGREE TO COMPLETE THE ALTERNATIVE DISPUTE RESOLUTION PROGRAM WITHIN 90 DAYS OF THE FILING OF THIS FORM.** Further Case Management Conference is requested

2.  Case is concluded and judgment or dismissal has been entered as to all parties.

3.  Case has settled; dismissal shall be filed on or before _____.

4.  Case is at-issue and all parties agree that matter may be set for trial without the necessity of a Case Management Conference.

5.  All defendants have not been served and the plaintiff has been granted an extension by the court until _____ to complete service on all defendants.     Further Case Management Conference is requested.

6.  A defendant has filed bankruptcy; case should be stayed pending the completion of bankruptcy. Plaintiff shall file a Supplemental Case Management Statement within ten (10) days of any action by the debtor or the Bankruptcy Court that would act as a lifting of said stay.

7.  Case has been removed to Federal Court. Plaintiff shall file a Supplemental Case Management Statement within ten (10) days of any remand back to Superior Court or of any judgment or dismissal filed in the Federal Court.

| Request to Vacate or Continue Initial Case Management Conference and Order | Case Number: |
|---|---|

8. Plaintiff has obtained a default as to all defendants and will perfect the default by entry of court or clerk judgment in timely manner. Further Case Management Conference is requested.

9. All defendants have appeared and discovery is proceeding in a timely manner. For reasons set forth in the parties' Case Management Statements, the case should be designated (circle one) Category I, Category II or Category III.  Parties anticipate case will be ready to set for trial as of _____. Further Case Management Conference is requested.

10. Other:

_____

_____

_____

_____

_____. Further Case Management Conference is requested.

_____
Counsel for Plaintiff (*print name*)

_____
Signature

_____
Counsel for Plaintiff (*print name*)

_____
Signature

_____
Counsel for Defendant (*print name*)

_____
Signature

_____
Counsel for Defendant (*print name*)

_____
Signature

*For additional parties, attach additional signature pages as needed.*

---

Good Cause appearing, **IT IS SO ORDERED** that the Case Management Conference set for

_____ is vacated.

❑ Supplemental Case Management Statements shall be filed as set forth in 6 or 7 above.

❑ Receipt of Dismissal is set for _____.

❑ Further Case Management Conference is set for _____
Parties shall file Case Management Statements prior to said hearing per Local Rule 6.08(e).

**PLAINTIFF MUST SERVE A COPY OF THIS ORDER ON ALL PARTIES.**

Dated: _____    _____

*Judge of the Superior Court*

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
3M COMPANY; WALMART STORES, INC.; MICHAEL DOMINGOS;
CHRISTOPHER BOGGS, MATTHEW YORK and DOES 1 through
100

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

# FILED

**MAY 3 1 2007**

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT

DEPUTY

MARY C. GILBERT

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOSEPH EASLEY and MARY EASLEY as the surviving
parents and lawful heirs of KASEY JO EASLEY,
deceased; The Estate of KASEY JO EASLEY, through
Decedent's Administrator, JOSEPH EASLEY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF MONTEREY COUNTY
1200 Aguajito Road
1200 Aguajito Road
Monterey, CA 93940
Civil Division

**CASE NUMBER:**
*(Número del Caso):*
**M 8 4 8 7 7**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
FRANK M. PITRE (#100077)          ALAN F. HUNTER (#099805) (650) 697-6000  (650) 697-0577
COTCHETT, PITRE & MCCARTHY        GAVIN & CUNNINGHAM
840 Malcolm Rd., Ste. 200         1530 The Alameda, Suite 210
Burlingame, CA 94010              San Jose, CA 95126

DATE:                             Clerk, by                                , Deputy
*(Fecha)* **MAY 3 1 2007**      LISA M. GALDOS  *(Secretario)*     MARY C. GILBERT  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

1   FRANK M. PITRE (#100077)
    Fpitre@cpmlegal.com
2   NIKI B. OKCU (#229345)
    Nokcu@cpmlegal.com
3   **COTCHETT, PITRE & McCARTHY**
    San Francisco Airport Office Center
4   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
5   Telephone: (650) 697-6000
    Facsimile: (650) 697-0577
6
7   ALAN F. HUNTER (#099805)
    Hunter@gclitigation.com
8   **GAVIN & CUNNINGHAM**
    1530 The Alameda, Suite 210
    San Jose, California 95126
9   Telephone: (408) 294-8500
    Facsimile: (408) 294-8596
10

**FILED**

MAY 3 1 2007

LISA M. GALDOS,
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

MARY C. GILBERT

11  *Attorneys for Plaintiffs Joseph and Mary Easley*

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                  **IN AND FOR THE COUNTY OF MONTEREY**

15

16  JOSEPH EASLEY and MARY EASLEY as      )   CASE NO.   **M 8 4 8 7 7**
    the surviving parents and lawful heirs of )
17  KASEY JO EASLEY, deceased; The Estate  )   **COMPLAINT FOR DAMAGES**
    of KASEY JO EASLEY, through            )   **PURSUANT TO WRONGFUL DEATH**
18  Decedent's Administrator, JOSEPH       )   **BASED UPON**
    EASLEY                                 )
19                                         )   1.  **STRICT PRODUCT LIABILITY**
            Plaintiffs,                    )       **(DESIGN DEFECT)**
20                                         )
        v.                                 )   2.  **STRICT PRODUCT LIABILITY**
21                                         )       **(FAILURE TO WARN)**
    3M COMPANY; WALMART STORES,            )
22  INC.; MICHAEL DOMINGOS;               )   3.  **NEGLIGENCE (AGAINST 3M**
    CHRISTOPHER BOGGS, MATTHEW             )       **COMPANY AND WALMART)**
23  YORK and DOES 1 through 100,           )
                                           )   4.  **NEGLIGENCE (AGAINST**
24          Defendants.                    )       **MICHAEL DOMINGOS,**
                                           )       **CHRISTOPHER BOGGS AND**
25                                             **MATTHEW YORK)**

26                                           5.  **SURVIVAL CLAIM &**
                                                 **REQUEST FOR PUNITIVE**
27                                               **DAMAGES**

28
                                             **DEMAND FOR JURY TRIAL**

                                _____
                                **COMPLAINT**

1

# TABLE OF CONTENTS

2
**Page**

3   I.   INTRODUCTION ................................................ 1

4        A.   Overview ............................................. 1

5        B.   Factual Background ................................... 2

6   II.  PARTIES ..................................................... 2

7        A.   Plaintiffs .......................................... 2

8        B.   Defendants .......................................... 3

9        C.   Other Defendants .................................... 5

10  III. JURISDICTION AND VENUE ...................................... 5

11  IV.  AGENCY, AIDING AND ABETTING ................................. 5

12  V.   GENERAL ALLEGATIONS ......................................... 7

13       A.   Defendants Manufactured, Distributed, Promoted and Sold a Dangerous
14            Product ............................................. 7

15       B.   Inhalant Abuse Has Been A Wide Spread Problem Two Decades ...... 10

16       C.   The Incident ........................................ 12

17  VI.  CAUSES OF ACTION ............................................ 13

18       FIRST CAUSE OF ACTION ...................................... 13
         (Strict Liability Design Defect Against 3M COMPANY AND
19       WALMART) ................................................... 13

20       SECOND CAUSE OF ACTION ..................................... 15
         (Strict Liability Failure to Warn Against 3M COMPANY AND
21       WALMART) ................................................... 15

22       THIRD CAUSE OF ACTION ...................................... 16
         (Negligence Against 3M COMPANY AND WALMART) ........... 16

23       FOURTH CAUSE OF ACTION ..................................... 18
24       (Negligence Against MICHAEL DOMINGOS, CHRISTOPHER
         BOGGS and MATTHEW YORK) .................................. 18

25       FIFTH CAUSE OF ACTION ...................................... 19
         (Survival Cause of Action And Request For Punitive Damages On
26       Behalf of the Estate of KASEY JO EASLEY Against All Defendants) .. 19

27  PRAYER FOR RELIEF ............................................... 21

28  JURY DEMAND .................................................... 22

---

**COMPLAINT**

# I.    INTRODUCTION

## A.    Overview

1.    On November 25, 2006, the life of 19 year old KASEY JO EASLEY (hereafter "KASEY") came to an abrupt end as a consequence of her naive inhalation of a highly toxic and addictive substance known as difluoroethane, a lethal chemical contained in a popular product used to clean dust from home or office equipment. The product is well known by its brand name, "3M Dust Remover", and was manufactured, distributed and sold by the 3M COMPANY. The product has become widely successful - - not so much for its revolutionary cleaning properties - - but because of its known association with inhalant abuse by children and teenagers who seek a cheap "high". The tragedy is that the deadly consequences of the practice of inhaling the compressed gas contents of the product, known as "huffing" or "dusting", are beguiling for the most likely targets - - children and teenagers duped by the misconception they are merely sniffing "air". In reality, they are exposing themselves to a toxic gas that is capable of causing sudden death.

2.    The death of KASEY JO EASLEY was the foreseeable by product of the predatory actions of Defendants MICHAEL DOMINGOS, CHRISTOPHER BOGGS and MATTHEW YORK, who lured and enticed KASEY to their home for the purpose of engaging in "dusting"; and the callous disregard for safety and human life by Defendants 3M COMPANY and WALMART, the largest retailer of 3M Dust Remover, who promote and sell a product widely known to be used by children and teenagers to produce mind-altering effects with lethal consequences, without adequate warnings or the inclusion of available additives which deter inhalant abuse.



1  **B.    Factual Background**

2      3.     On the evening of November 23, 2006, KASEY was invited to the home of

3  Defendants MICHAEL DOMINGOS and CHRISTOPHER BOGGS. DOMINGOS, who had

4  a prior history of unlawful misconduct with minors and for providing drugs to teenagers, ran

5  a household where he and BOGGS furnished, supplied and/or distributed alcohol and illicit

6  drugs to under age teens or young adults such as KASEY.  Defendants DOMINGOS and

7  BOGGS also encouraged and promoted inhalant abuse and provided an environment where

8  they enabled teens and young adults to consume lethal substances like difluoroethane.

9  Because of Defendants' combined wrongful conduct, KASEY was seduced into inhaling the

10  toxic substances contained in the 3M Dust Remover.  Defendants wrongful conduct is

11  compounded by the fact that they encouraged KASEY to use a hot tub while she was under

12  the influence of difluoroethane, and enticed her to keep consuming this product while highly

13  impaired.  As a consequence, KASEY drowned while under the influence of the toxic

14  substance, and died two days later.

15      4.     At all relevant times herein mentioned, Defendants 3M COMPANY and

16  WALMART were aware that the 3M Dust Remover was commonly and dangerously abused

17  by teenagers.  Despite this knowledge, Defendants failed to utilize a feasible alternative

18  formulation capable of deterring consumption of the product as an inhalant; and/or failed to

19  provide adequate warning of the lethal consequences associated with  misuse of the product.

20      5.     As a result of the combined wrongful acts of Defendants, and each one of them,

21  who, with a conscious indifference for the consequences of their acts, acted solely and/or in

22  combination in the manner hereinafter alleged to cause the death of KASEY EASLEY.

23  **II.    PARTIES**

24      **A.    Plaintiffs**

25      6.     Plaintiff JOSEPH EASLEY is, and at all times herein mentioned was, a

26  loving and devoted father to the decedent KASEY JO EASLEY. Decedent was, at all relevant

27  times prior to her death, a dedicated and loving daughter. Plaintiff JOSEPH EASLEY brings

28  this action as a surviving parent. He is also the administrator of the KASEY JO EASLEY

---

**COMPLAINT**                                                                                    2

1   Estate and, as such, he is lawfully entitled to pursue all claims and causes of action for

2   damage, loss or destruction of the assets of the estate pursuant to Code of Civ. Proc.§ 377.30.

3        7.    Plaintiff JOSEPH EASLEY is, and at all relevant times herein mentioned was,

4   an individual residing in the City of San Jose, County of Santa Clara, State of California.

5        8.    Plaintiff MARY EASLEY is, and at all times herein mentioned was, a loving

6   and devoted mother to the decedent KASEY JO EASLEY.  Decedent was, at all relevant

7   times prior to her death, a dedicated and loving daughter.  Plaintiff MARY EASLEY brings

8   this action as a surviving parent.

9        9.    Plaintiff MARY EASLEY is, and at all times herein mentioned was, an

10  individual residing in the City of San Jose, County of Santa Clara, State of California.

11       **B.    Defendants**

12       10.   Plaintiffs are informed and believe, and thereon allege, that Defendant 3M

13  COMPANY is and at all times herein mentioned was, a corporation, association, partnership,

14  joint venture, and/or sole proprietorship organized and existing under the laws of the State of

15  Delaware and/or maintaining its principal place of business in St. Paul, Minnesota and doing

16  business in the County of Monterey.

17       11.   By its own admission, 3M COMPANY is a diversified technology company

18  with presence in the following markets: consumer and office; display and graphics; electro

19  and communications; health care; industrial and transportation; and safety, security and

20  protection services.  The company sells products in nearly 200 countries, it has more than

21  69,000 employees, and its worldwide sales is $22.9 billion.  At all times herein mentioned,

22  Plaintiffs are informed and believe that Defendant 3M designed, manufactured, distributed,

23  marketed, promoted, advertised, sold, supplied tested and/or inspected the product known as

24  3M Dust Remover.

25       12.   Plaintiffs are informed and believe, and thereon allege, that Defendant

26  WALMART STORES, INC. ("WALMART") is, and at all times herein mentioned was, a

27  corporation, association, partnership, joint venture, and/or sole proprietorship organized and

28  existing under the laws of the State of Delaware and/or maintaining its principle place of

---

**COMPLAINT**                                                                3

1 business in Bentonville, Arkansas, State of California and doing business in the County of
2 Monterey.

3      13.      WALMART is the world's largest retailer.  At all times herein mentioned,
4 Plaintiffs are informed and believe that Defendant WALMART marketed, distributed and/or
5 sold the 3M Dust Remover product referenced above. Plaintiffs are informed and believe, and
6 therein allege, that the Decedent, KASEY, purchased the 3M Dust Remover product from the
7 WALMART retail outlet located in Gilroy, California.

8      14.      Plaintiffs are informed and believe, and thereon allege, that Defendant
9 MICHAEL DOMINGOS ("DOMINGOS") is an individual who was the owner of the house
10 located at 22552 Indian Springs Road, in the City of Salinas County of Monterey, where this
11 tragic incident took place.  Plaintiffs are informed and believe, and therein allege that
12 DOMINGOS is a resident of Monterey County, California.

13      15.      At all relevant times, DOMINGOS ran a house of ill repute where he furnished,
14 supplied and/or distributed alcohol and illicit drugs such as ecstacy to under age teens or
15 young adults for the purpose of recruiting them to have sex with DOMINGOS.  In 1999,
16 DOMINGOS was charged by the County of Monterey District Attorney's Office for supplying
17 drugs to minors and for 13 counts of child molestation and other related charges. Plaintiffs
18 are informed and believe, and therein allege, that the charges were thereafter dismissed, in
19 return for DOMINGOS pleading no contest to a violation of Health & Safety Code §11361A
20 (Employment of a minor to sell or carry marijuana).

21      16.      Plaintiffs are informed and believe, and thereon allege, that Defendant
22 CHRISTOPHER BOGGS ("BOGGS") is an individual residing in the City and County of San
23 Diego, State of California.  At all times herein mentioned, BOGGS lived with DOMINGOS
24 at the house located at 22552 Indian Springs Road, in the City of Salinas, County of
25 Monterey, where this tragic incident took place.

26      17.      Plaintiffs are informed and believe, and thereon, allege, that Defendant
27 MATTHEW YORK ("YORK") is an individual residing in the County of Monterey,
28 California.

C.    **Other Defendants**

18.    The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants DOES 1 through 100 are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiffs further allege that each said fictitious Defendant is in some manner responsible for the acts and occurrences hereinafter set forth. Plaintiffs will amend this Complaint to show the true names and capacities of these DOE Defendants when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible.

III.    **JURISDICTION AND VENUE**

19.    Defendants are subject to the jurisdiction of this Court by virtue of their business dealings and transactions in California, by having caused injuries through their acts and omissions within the County of Monterey and throughout the State of California.

20.    Venue is proper in this County as Defendants are located and/or perform business in this County, and a substantial part of the events, acts, omissions and transactions complained of herein occurred in this County.

21.    Defendants have sufficient minimum contacts with California, are citizens of California or otherwise purposefully avail themselves of benefits from California or do business in California so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

22.    The amount in controversy exceeds the jurisdictional minimum of this Court.

IV.    **AGENCY, AIDING AND ABETTING**

23.    At all relevant times herein mentioned, Defendants 3M COMPANY and WALMART knew that the 3M Dust Remover was commonly abused by teenagers and young adults as an inhalant capable of producing psychoactive effects. Despite this wide spread knowledge and awareness of the potential lethal consequences of foreseeable misuse of the product, Defendants 3M COMPANY and WALMART failed to use due care in designing, formulating, manufacturing, promoting, inspecting, supplying, distributing and/or selling the 3M Dust Remover so as to avoid foreseeable harm or injury to users of product, including

1  the failure to add a feasible alternative formulation to the product such as a "bittergent",
2  capable of deterring inhalant abuse.   Furthermore, Defendants 3M COMPANY and
3  WALMART entered into agreements with the intention of suppressing the dissemination of
4  information regarding the serious risks and dangers posed by foreseeable misuses of the
5  product as described above.

6      24.    At all relevant times herein mentioned, Defendants DOMINGOS, BOGGS and
7  YORK entered into agreements to supply, furnish and enable the consumption of illegal drugs
8  and toxic substances such as difluorethane to teenagers and young adults, including the
9  decedent, and provided an environment where the consumption of these unlawful substances
10  was encouraged.

11      25.    At all relevant times herein mentioned, each of the Defendants was an agent,
12  employee, servant, partner, alter ego, and/or joint venturer of each of its/his/her co-
13  Defendants, and was at all times acting within the course and scope of said agency,
14  employment, service, partnership, conspiracy, alter ego status, and/or joint venture.

15      26.    Defendants entered into an agreement with the other Defendants and third
16  parties to pursue, and knowingly pursued, the common course of conduct to commit or
17  participate in the commission of all or part of the unlawful acts, tortious acts, plans, schemes,
18  transactions alleged herein, including but not limited to: failure to use due care in designing,
19  formulating, manufacturing, promoting, inspecting, supplying, distributing and/or selling the
20  3M Dust Remover so as to avoid foreseeable misuses of this product; suppressing and/or
21  failure to cause the dissemination of information regarding the serious risks and dangers posed
22  by the foreseeable misuses of the 3M Dust Remover; and supplying, furnishing and providing
23  an environment where the consumption of illegal drugs and toxic substances such as the 3M
24  Dust Remover took place.

25      27.    The liability of each Defendant arises from the fact that each committed and
26  engaged in a conspiracy to accomplish the commission of all or part of the unlawful and
27  / / /
28  / / /

1  tortious conduct alleged herein; and intentionally, knowingly, fraudulently and without legal
2  justification or excuse, engaged in the conduct herein alleged.

3      28.    At all pertinent times, Defendants acted through their duly authorized agents,
4  servants, and employees who were then acting in the course and scope of their employment,
5  and in furtherance of the business of said Defendants, with the knowledge, ratification and
6  consent of their officers, directors and managing agents.

7      29.    Defendants, and their predecessors and/or successors in interest did business
8  in the State of California, County of Monterey; made contracts to be performed in whole or
9  in part in California; and manufactured, tested, sold, offered for sale, supplied or materially
10 participated with others in placing the 3M Dust Remover into the stream of commerce, which
11 the Defendants knew to be dangerous and hazardous and which the Defendants knew would
12 be substantially certain to cause injury to the general public, who would foreseeably misuse
13 the product for its intoxicating effects.

14     30.    Defendants, and their predecessors and successors in interest, performed such
15 acts as were intended to and did result in the sale and distribution of the 3M Dust Remover
16 in the State of California, and its use and consumption by the decedent KASEY JO EASLEY.

17 **V.**    **GENERAL ALLEGATIONS**

18     **A.**    **Defendants Manufactured, Distributed, Promoted and Sold a Dangerous**
19               **Product**

20     31.    Difluoroethane, also known as R-152A, is a chemical compound that is mainly
21 used for refrigeration and as an aerosol propellant. It is most commonly found in electronic
22 cleaning products and many consumer aerosol products.

23     32.    The abuse of aerosols and other common household products such as air
24 fresheners, spray paint, gasoline, and glue has become a widespread, especially among
25 teenagers and young adults because these types of products are readily available and
26 inexpensive as a means of producing a mind-altering "high" similar to alcohol intoxication.

27 ///

28 ///

---

1    What is largely unknown, unappreciated and under-reported, is that inhalant abuse can
2    produce sudden, deadly consequences.

3        33.    A form of inhalant abuse called "dusting" involves inhaling compressed gas
4    from aerosol cans like computer dusting products. Often, the user is under the false
5    impression that these products contain air and that what they are inhaling is compressed air
6    that poses no harm to the human body. Despite misconceptions, however, computer dust
7    cleaning products, such as the 3M Dust Remover, do not contain compressed air; they contain
8    compressed gas. Chemicals such as difluoroethane are used to propel the blast of air that
9    cleans. These propellants, when inhaled, produce a euphoric high and dizziness because they
10   go directly to the brain. The experience is similar to being drunk, users often feel happy and
11   lack inhibitions. Common effects also include dizziness, drowsiness and even hallucinations.

12       34.    Abusing these substances can lead to nausea, vomiting, black-outs, heart
13   problems, accidents and death. Dusting fills the lungs and restricts good air from entering,
14   and the lack of oxygen can cause the brain and heart to shut down. Fatalities can occur
15   because: (1) the hydrocarbons contained in the product can cause heart arrhythmia that leads
16   to cardiac arrest; or (2) inhaling the substance can displace the oxygen in the user's lungs,
17   causing asphyxiation. In essence, the user can suffocate without knowing.

18       35.    Inhalant abuse is perhaps more dangerous than illegal drugs because unlike
19   overdosing, which occurs at a certain level, "dusting" can kill with any amount. It is
20   estimated that about 22 percent of those who died as a result of inhalant abuse die upon first
21   use.

22       36.    In an attempt to discourage the dangerous practice of inhalant abuse,
23   manufacturers have developed a new formulation for dust removers and similar products, by
24   incorporating an additive called a "bitterent" or "bittergent" which makes the contents of the
25   product extremely unpalatable to those who attempt to inhale them.

26       37.    Until recently, the 3M Dust Remover was flying off the shelves because, unlike
27   other similar products, it did not contain a "bittergent", or other similar additive to prevent
28   inhalation; as a result, the product was earmarked for purchase by teenagers and young adults

---

**COMPLAINT**         8

1   at excessive quantities for consumption as an intoxicating substance, without regard for its
2   serious lethal consequences.



**Clean Safe
Dust Remover**    $4.96    $4.96    **3M Dust
Remover**

14      38.     Based upon the serious risk presented by the abuse of inhalants, the California
15  legislature has outlawed the use of inhalants by minors.  California Health and Safety Code
16  States as follows:

17          The Legislature finds and declares all of the following:

18      (a) The Legislature has established various drug- and alcohol-related programs
19      which provide for education, prevention, intervention, treatment, or
        enforcement.

20      (b) The Legislature has classified certain substances as controlled substances
21      and has defined the lawful and unlawful use of controlled substances which are
        commonly referred to as, but not limited to, anabolic steroids, marijuana, and
22      cocaine.

23      (c) The Legislature has classified certain substances as imitation controlled
        substances which are commonly referred to as, but notlimited to, designer
24      drugs.

25      (d) The Legislature has determined that the possession with the intent to be
        under the influence, or being under the influence of toluene, or any substance
26      or material containing toluene, or any substance with similar toxic qualities, is
        unlawful.  Some substances or materials containing toluene, or substances with
27      similar toxic qualities are commonly referred to, but not limited to, **inhalants
        such as cement, glue, and paint thinner. . . .** (Emphasis supplied.)

28  / / /

---

39.     Similarly, Penal Code Section 380(a) outlaws the use of toluene, substance that is similar to difluoroethane and commonly abused by teenagers and young adults.

(a) Every person who sells, dispenses or distributes toluene, or any substance or material containing toluene, to any person who is less than 18 years of age shall be guilty of a misdemeanor, and upon conviction shall be fined in a sum of not less than one thousand dollars ($1,000), nor more than two thousand five hundred dollars ($2,500), or by imprisonment for not less than six months nor more than one year.

(b) The court shall order the suspension of the business license, for a period of one year, of a person who knowingly violates any of the provisions of this section after having been previously convicted of a violation of this section unless the owner of such business license can demonstrate a good faith attempt to prevent illegal sales or deliveries by employees. The provisions of this subdivision shall become operative on July 1, 1980.

(c) The provisions of this section shall apply to, but are not limited to, the sale or distribution of glue, cement, dope, paint thinners, paint, and any combination of hydrocarbons either alone or in combination with any substance or material including, but not limited to, paint, paint thinners, shellac thinners, and solvents which, when inhaled, ingested or breathed, can cause a person to be under the influence of, or intoxicated from, any such combination of hydrocarbons. This section shall not prohibit the sale of gasoline or other motor vehicle fuels to persons less than 18 years of age.

(d) This section shall not apply to any glue or cement which has been certified by the State Department of Health Services as containing a substance which makes such glue or cement malodorous or causes such glue or cement to induce sneezing, nor shall this section apply where the glue or cement is sold, delivered, or given away simultaneously with or as part of a kit used for the construction of model airplanes, model boats, model automobiles, model trains, or other similar models or used for the assembly or creation of hobby craft items using such components as beads, tiles, tiffany glass, ceramics, clay, or other craft-related components.

**B.    Inhalant Abuse Has Been A Wide Spread Problem for Two Decades**

40.     Drug abuse experts have viewed inhalant abuse as a problem for more than 20 years. The Centers for disease control began tracking cases in 1995, and the problem has received a lot of public attention since then.

41.     1998, the U.S. Consumer Product Safety Commission, the Office of National Drug Control Policy and Deloris Jordan, author of Family First and mother of five (including basketball star Michael Jordan) launched a campaign against inhalant abuse. They introduced an educational video about inhalant abuse for parents, teachers and care givers.

/ / /

---

42.     On March 2, 1999, The New York Times reported that five teen girls were killed in January in a car accident in Chester Heights, Pennsylvania.  The girls had been inhaling difluoroethane contained in a product called Duster II.

43.     The next day, on March 3, 1999, CBS News reported that inhalant abuse was rising, and it spotlighted the death of the five teens.

44.     In 2001, the Consumer Product Safety Commission published its Parents Guide to Preventing Inhalant Abuse.

45.     On March 20, 2002, the Alliance for Consumer Education launched its flagship program, the Inhalant Abuse Prevention program, at a press conference in Washington, D.C.

46.     On April 22, 2003, ABC Good Morning America reported that the JFK Center for Civil Rights was suing Lowes, Target and Home Depot for selling household products to children who could inhale them to get high.

47.     On June 1, 2004, CBS News with Dan Rather presented a report on inhalant abuse.

48.     In 2004, Partnership for a Drug Free America, reported abuse of inhalants by middle school children was up 44 percent in two years.

49.     In 2005, the National Institute on Drug Abuse, in its Drug Alert bulletin, said drug use was down, except for inhalant abuse which it described as "highly toxic" and growing.

50.     On July 26, 2005, the NBC Today show did a segment entirely on dusting called "Dusting is the new killer high for teens."

51.     On November 17, 2005, the makers of CleanSafe Dust Remover (IQ Products Company) published a Material Safety Data Sheet showing that their product used a "unique Bittergent Technology" to deter inhalant abuse.

52.     On March 21, 2006, Good Morning America presented a report on a fatal accident that was caused by dusting.

53.     In October 2006, the manufacturer of Dust-Off (Falcon Safety Products) announced that it had added a bittering agent to its product.

54.    On October 6, 2006, a driver high on 3M Dust Remover struck and killed a motorcyclist in Florida.

55.    In November 2006, a student crashed into a restaurant in Arkansas after inhaling the 3M Dust Remover.

56.    In January 2007, CBS News presented a report on inhalant abuse, including dusting.

57.    In March 2007, 3M COMPANY introduced its bittering agent, but not soon enough to have prevented the tragic death of KASEY.

**C.    The Incident**

58.    KASEY died on November 25, 2006. Just two days earlier on November 23, 2006, KASEY had a traditional Thanksgiving meal with her family at their home in San Jose. Unbeknownst to KASEY and her family, this would be the last meal that they would share together.

59.    Later that evening, KASEY was invited to the DOMINGOS/BOGGS residence. KASEY drove down to Salinas to meet two acquaintances, MATT YORK ("YORK") and BOGGS, whom she had met recently. While on her way to Salinas, she received a telephone call from BOGGS who asked her to buy "air." KASEY stopped by WALMART in Gilroy, and purchased four cans of 3M Dust Remover.

60.    KASEY knew to buy the 3M Dust Remover as opposed to other brands because on at least one prior occasion, KASEY was scolded by BOGGS for buying dust remover product which contained a "bittergent", an additive which prevents inhalant abuse.

61.    After purchasing the 3M Dust Remover from WALMART, KASEY met BOGGS and YORK at a local Chevron gas station in Salinas. After a quick stop at the gas station, they drove to the house shared by BOGGS and DOMINGOS and arrived there sometime between 10:30-10:45 p.m.

62.    Upon arriving at the house, KASEY and YORK engaged in a conversation with DOMINGOS, and shortly thereafter, they began inhaling the compressed gasses contained in the 3M Dust Remover. Despite the knowledge that KASEY was under the influence of

1  difluoroethane and impaired, BOGGS, DOMINGOS and YORK enticed KASEY to use the

2  hot tub located in the back of the residence in her fragile condition, all the while encouraging

3  her to keep inhaling the 3M Dust Remover.  In fact, BOGGS and YORK also got in the hot

4  tub with KASEY and continued inhaling difluoroethane from the 3M Dust Remover

5  themselves.

6          63.    BOGGS and YORK told the Monterey County Sherriff's office that at some

7  point they left KASEY alone in the hot tub, and when they came back they found her laying

8  face down in the water.  Although KASEY was rushed to Salinas Valley Memorial Hospital,

9  efforts to save her were unsuccessful and she was pronounced dead on November 25, 2006.

10  **VI.    CAUSES OF ACTION**

11              **FIRST CAUSE OF ACTION**

12      **(Strict Liability Design Defect Against 3M COMPANY AND WALMART)**

13          As and for a First Cause of Action against Defendants, Plaintiffs are informed and

14  believe, and thereon allege as follows:

15          64.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set

16  forth in detail.

17          65.    At all times herein mentioned, Defendants were engaged in the business of

18  research, licensing, designing, testing, manufacturing, producing, processing, assembling,

19  formulating, inspecting, distributing, marketing, labeling, promoting, packaging, warning,

20  advertising, selling and/or distributing the 3M Dust Remover in the State of California.  At

21  the time of use, the product was substantially the same as when it left Defendants' possession.

22          66.    At all relevant times herein mentioned, Defendants and each of them knew that

23  the 3M Dust Remover was commonly misused and abused by adolescents and young adults

24  who purchased the product for the sole purpose of inhaling the subject product to produce a

25  euphoric "high".  In fact, the 3M Dust Remover was flying off the shelves at WALMART

26  because, unlike other similar products, the 3M Dust Remover did not contain a "bittergent"

27  — an additive which adds a bitter smell and taste to the chemicals contained in the dust

28

1 | remover making it unpalatable – thus preventing teenagers and young adults from misusing
2 | or inhaling the contents of the product.

3 |     67.    At all times relevant, the 3M Dust Remover was misused and/or abused in a way
4 | that was reasonably foreseeable to Defendants.

5 |     68.    Defendants knew or should have known that foreseeable misuses of the 3M
6 | Dust Remover posed an increased risk of cardiovascular injury, brain injury and death; and
7 | therefore, constituted a product which was foreseeably dangerous if misused. Despite this
8 | knowledge, Defendants failed to take any precautions to prevent known misuse and abuses
9 | of the product. Defendants intentionally proceeded with the manufacture, sale, promotion,
10 | and/or distribution and marketing of 3M Dust Remover with actual or constructive knowledge
11 | that persons would be exposed to serious risks of potential harm, in order to advance its own
12 | pecuniary interests.

13 |     69.    Prior to the manufacture, promotion, sale and/or distribution of 3M Dust
14 | Remover, Defendants knew that the product was defective and/or unsafe as previously
15 | described, and knew that young people who foreseeably misused the 3M Dust Remover as an
16 | inhalant would experience, and/or would be exposed to increased risk of severe physical
17 | injuries, and/or death. Further, Defendants, through its officers, directors and managing
18 | agents, had notice and knowledge prior to the date of the promotion, sale or distribution of
19 | said product to decedent, that the product was widely used by young adults such as the
20 | decedent as an inhalant, and thus, presented a risk of increased risk of injury, harm, or sudden
21 | death to persons exposed to the product.

22 |     70.    As a direct and legal cause of the Defendants' wrongful conduct herein above
23 | set forth, KASEY died and Plaintiffs have suffered the injuries and damages herein alleged.

24 |     71.    By reason of the premises and of the wrongful death of their daughter KASEY,
25 | Plaintiffs JOSEPH and MARY EASLEY suffered and continue to suffer loss of love,
26 | companionship, comfort, affection, solace and the moral support of their daughter.

27 | / / /
28 | / / /

72.    By reason of the premises and of the wrongful death of their daughter KASEY, Plaintiffs have incurred and/or will incur funeral and burial expenses in an amount to be determined at trial.

73.    By reason of the wrongful death of their daughter KASEY, resulting from the wrongful acts and/or omissions of Defendants, and each of them, Plaintiffs hereby seek recovery of other such relief as may be just and provided for under Code of Civ. Proc. § 377.61.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

**(Strict Liability Failure to Warn Against 3M COMPANY AND WALMART)**

As and for a Second Cause of Action against Defendants, Plaintiffs are informed and believe, and thereon allege as follows:

74.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail herein.

75.    At all times herein mentioned, Defendants were engaged in the business of research, licensing, designing, testing, manufacturing, producing, processing, assembling, formulating, inspecting, distributing, marketing, labeling, promoting, packaging, warning, advertising, and/or distributing the 3M Dust Remover in the State of California.

76.    At all times relevant, the 3M Dust Remover was defective and/or unsafe at the time of its manufacture, development, production, formulation, processing, testing, inspection, endorsement, prescription, promotion, sale and/or distribution, in that, there was a serious risk of adverse health effects associated with the foreseeable misuse of this product as an inhalant drug.

77.    Defendant, through its officers, directors and managing agents, had prior notice and knowledge from several sources, prior to the date of the promotion, sale or distribution of said product to decedent that the product was widely misused by young adults such as the decedent as an inhalant drug, and thus presented a risk of increased harm to the consumer,

/ / /

1   including the decedent, and as such, persons exposed to 3M Dust Remover were unreasonably
2   subjected to risk of injury, harm, or sudden death.

3      78.    At all times herein mentioned, Defendants knew that the 3M Dust Remover was
4   to be used by consumers without inspection and/or knowledge of the increased risk of adverse
5   health effects associated with consumption of this product as an inhalant drug as set forth
6   herein. Moreover, KASEY neither knew, or had reason to know at the time of the use of 3M
7   Dust Remover, of the existence of the aforementioned side effects, deleterious health risks
8   and/or increased risk of health hazards or sudden death.

9      79.    Despite being aware of the wide spread and foreseeable misuse of the subject
10   product as an inhalant drug, Defendants failed to provide proper warning to consumers
11   regarding all possible adverse side effects associated with the use of 3M Dust Remover and
12   the severity of such adverse side effects, including the potential risk of cardiovascular injury,
13   brain injury and sudden death; and that any warnings given did not adequately reflect the
14   potential symptoms, scope of severity of the side effects or the increased risk of health hazards
15   and/or sudden death posed.

16      80.    The 3M Dust Remover was misused in a way that was reasonably foreseeable
17   to Defendants as KASEY, like many young adults, foreseeably misused the 3M Dust Remover
18   as an inhalant drug.

19      81.    As a result, KASEY sustained serious injuries resulting in her death, and
20   Plaintiffs suffered the injuries and damages alleged herein above.

21      82.    The lack of sufficient and/or adequate instructions or warnings was a substantial
22   factor in causing the death of KASEY and Plaintiffs' harm.

23                  **THIRD CAUSE OF ACTION**

24       **(Negligence Against 3M COMPANY AND WALMART)**

25      As and for a Third Cause of Action against Defendants, Plaintiffs are informed and
26   believe, and thereon allege as follows:

27      83.    Plaintiffs hereby incorporates by reference all paragraphs above as if fully set
28   forth in detail herein.

---

84.    At all times herein mentioned, Defendants had a duty to exercise reasonable care in the manufacture, design, testing, producing, processing, assembling, formulation, inspecting, researching, quality assurance, quality control, distributing, marketing, advertising, promoting, labeling, packaging, preparing for use, sales, recalling and/or adequately warning of the risks and dangers associated with foreseeable misuse of the 3M Dust Remover, including the duty to assure that the product did not cause users to be exposed to unreasonable harm or injury, and/or the increased risk of adverse, harmful and/or potentially sudden and fatal side effects.

85.    At all times herein mentioned, Defendants failed to exercise ordinary care and were negligent, careless, and/or reckless in the manufacture, design, production, formulation, processing, assembling, inspecting, distributing, marketing, advertising, promoting, labeling, packaging and/or introducing into commerce the 3M Dust Remover in that Defendants:

- Failed to use due care in designing, formulating and/or manufacturing the 3M Dust Remover so as to avoid the aforementioned adverse health risks to individuals using the product as an inhalant, including failure to add a bittering agent;

- Failed to use due care and adequately label and/or provide proper warnings regarding all possible adverse side effects associated with the foreseeable misuse of the 3M Dust Remover as an inhalant including the potentially sudden, fatal adverse health effects; and/or the warnings given did not adequately represent the scope of potentially harmful and/or fatal side effects of the product.

86.    As a legal result of the wrongful acts and omissions of Defendants, KASEY sustained severe injuries resulting in her death, and Plaintiffs suffered the injuries and damages alleged herein above.

WHEREFORE, Plaintiffs pray for relief as set forth below.

/ / /

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

### (Negligence Against MICHAEL DOMINGOS, CHRISTOPHER BOGGS and MATTHEW YORK)

As and for a Fourth Cause of Action against Defendants, Plaintiffs are informed and believe, and thereon allege as follows:

87.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail herein.

88.    At all times relevant herein mentioned, Defendants MICHAEL DOMINGOS AND CHRISTOPHER BOGGS ran a house of ill repute where they furnished, supplied and/or distributed alcohol and illicit drugs such as ecstacy to under age teens and young adults for the purpose of recruiting them to have sex with DOMINGOS.  On prior occasions, Defendants and/or each of them, instructed KASEY to purchase the 3M Dust Remover and bring it over to their house for the purpose of inhaling the product to produce a euphoric "high", and on at least one prior occasion when KASEY brought the wrong product which contained a "bittergent", she was scolded by Defendants.

89.    On the night of the incident, Defendants DOMINGOS, BOGGS and YORK invited KASEY to the 22552 Indian Springs Road residence and instructed her to purchase the 3M Dust Remover and bring it with her for the purpose of getting "high".  At all relevant times herein mentioned, Defendants intended and planned on inhaling the subject product with KASEY at their residence in Salinas, California, and in the hot tub located in the backyard of the same residence.

90.    At all relevant times herein mentioned, Defendants knew or should have known aware that KASEY would use the hot tub while impaired.  In fact, Defendants enticed KASEY to use the hot tub in a highly intoxicated condition and/or continued to encourage and cause her to consume diflourathane while in the hot tub.  Defendants BOGGS and/or YORK were in the hot tub with KASEY prior to her death.  As a legal result of Defendants' wrongful conduct, KASEY sustained serious injuries resulting in her death.

///

91.    By reason of the premises and of the wrongful death of their daughter KASEY, Plaintiffs JOSEPH and MARY EASLEY suffered and continue to suffer loss of love, companionship, comfort, affection, solace and the moral support of their daughter.

92.    By reason of the premises and of the wrongful death of their daughter KASEY, Plaintiffs have incurred and will incur funeral and burial expenses, and related medical expenses, in an amount to be determined at trial.

93.    By reason of the wrongful death of their daughter KASEY, resulting from the wrongful acts and/or omissions of Defendants, and each of them, Plaintiffs hereby seek recovery of other such relief as may be just and provided for under Code of Civ. Proc. § 377.61.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

**(Survival Cause of Action And Request For Punitive Damages On Behalf of the Estate of KASEY JO EASLEY Against All Defendants)**

As and for a Fifth Cause of Action against Defendants, Plaintiffs are informed and believe, and thereon allege as follows:

94.    Plaintiffs hereby incorporate by reference all paragraphs above as if fully set forth in detail herein.

95.    On or about November 23 through November 25, 2006, and prior to her death, the foregoing cause of action arose in KASEY JO EASLEY'S favor.  Since her death, KASEY'S father JOSEPH EASLEY opened an estate and has been appointed as the administrator of the KASEY JO EASLEY estate. Thus, he is legally authorized to pursue any and all legal claims for damages related thereto, and to recover damages for expenses incurred related to medical and/or emergency services related to this accident.

96.    By reason of the aforesaid premises, on or about November 25, 2006, and immediately prior to her death, several items of personal property belonging to KASEY were damaged, lost or destroyed.  Said property and/or economic losses occurred as a direct and legal result of Defendants' wrongful conduct herein above set forth.

1    97.    Furthermore, by reason of the aforesaid premises, on or about November 23,
2 2006 through November 25, 2006, and prior to her death, KASEY incurred substantial
3 expenses for emergency and/or medical services rendered in connection with this incident.
4 KASEY was treated at Salinas Valley Memorial Hospital for the injuries she sustained in the
5 subject incident for almost two days prior to her death. The said medical expenses occurred
6 as a direct and legal result of Defendants' wrongful conduct herein above set forth.

7    98.    At all times relevant herein mentioned, Defendants 3M COMPANY and
8 WALMART and DOES 1 through 100 Defendants, individually and/or in combination, by
9 act or omission, demonstrated a wanton and/or reckless indifference for the manufacture,
10 design, testing, producing, processing, assembling, formulation, inspecting, researching,
11 quality assurance, quality control, distributing, marketing, advertising, promoting, labeling,
12 packaging, preparing for use, sales, recalling and/or adequately warning of the risks and
13 dangers of 3M Dust Remover, including the duty to assure that the product did not cause users
14 to be exposed to unreasonable harm or injury, and/or the increased risk of adverse, harmful
15 and/or potentially fatal side effects.

16    99.    At all times relevant herein mentioned, Defendants were aware that young
17 adults such as KASEY commonly purchased this product for the purposes of using it as an
18 inhalant drug. Despite being aware of the wide spread misuse, Defendants failed to design,
19 formulate and/or manufacture 3M Dust Remover so as to avoid the aforementioned adverse
20 health risks to individuals using the product as an inhalant drug, including adding an available
21 bitterent to the product to prevent misuse of the product as an inhalant drug. Furthermore,
22 Defendants failed to adequately label and/or provide proper or effective warnings regarding
23 all possible adverse side effects associated with the foreseeable misuse of the 3M Dust
24 Remover as an inhalant including sudden fatal adverse health effects.

25    100.   Furthermore, at all times relevant herein mentioned, Defendants MICHAEL
26 DOMINGOS and CHRISTOPHER BOGGS ran a house of ill repute where they furnished,
27 supplied and/or distributed alcohol and illicit drugs such as ecstacy to under age teens or
28 young adults for the purpose of recruiting them to have sex with DOMINGOS. On the

1  evening of the incident, and on prior occasions, Defendants DOMINGOS, BOGGS and

2  YORK educated and/or instructed KASEY on how to use and/or purchase the 3M Dust

3  Remover as an inhalant drug. At all times relevant herein mentioned, Defendants were aware

4  of the serious risk of danger including risk of potential death associated with inhaling the said

5  product, yet despite knowing the foreseeable risk and danger associated with such an act and

6  conduct, Defendants enticed, encouraged and caused KASEY to misuse the said product and,

7  furthermore, caused her to use the hot tub in while under the influence of difluorathane, and

8  then left her unsupervised and in a highly impaired condition alone in the hot tub, causing her

9  to sustain serious injuries resulting in her death

10      101.   In doing the acts herein alleged, Defendants, and each of them, acted willfully,

11  despicably, wantonly, with oppression, fraud, and/or malice, and with a conscious disregard

12  of the rights and safety of others, such that Plaintiffs request that the trier of fact, in the

13  exercise of its sound discretion, award Plaintiffs additional damages for the sake of example

14  and sufficient to punish said Defendants for their despicable conduct, in an amount reasonably

15  related to Plaintiffs' actual damages and Defendants' wealth, yet sufficiently large enough to

16  be an example to others and to deter Defendants and others from engaging in similar conduct

17  in the future.

18      WHEREFORE, Plaintiffs pray for relief as set forth below.

19                          **PRAYER FOR RELIEF**

20  1.    For compensatory and general damages in a sum in excess of the jurisdictional

21        minimum of this Court and according to proof;

22  2.    For economic losses, in an amount according to proof at trial;

23  3.    For interest upon any judgment entered as provided by law;

24  4.    For punitive and exemplary damages according to proof;

25  5.    For damages to personal property according to proof;

26  6.    For costs of suit incurred herein; and

27  7.    Such other, further and different relief which the Court deems necessary, just

28        and proper.

---

1    DATED: May 30, 2007                    **COTCHETT, PITRE & McCARTHY**

2

3                                           By _____
                                            FRANK M. PITRE

4                                               Attorneys for Plaintiff Joseph and Mary Easley

5

6                                    **JURY DEMAND**

7        Plaintiffs demand trial by jury on all issues so triable.

8

9    DATED: May 30, 2007                    **COTCHETT, PITRE & McCARTHY**

10

11                                          By _____
                                            FRANK M. PITRE

12                                              Attorneys for Plaintiff Joseph and Mary Easley

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):
FRANK M. PITRE (#100077)     ALAN F. HUNTER (#099805)
NIKI B. OKCU (#229345)       GAVIN & CUNNINGHAM
COTCHETT, PITRE & MCCARTHY   1530 The Alameda, Suite 210
840 Malcolm Road, Suite 200  San Jose, CA 95126
Burlingame, CA 94010

TELEPHONE NO: (650) 697-6000    FAX NO.: (650) 697-0577
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: Civil Division

CASE NAME: JOSEPH EASLEY and MARY EASLEY, et al. v. 3M
COMPANY; WALMART STORES, INC., MICHAEL DOMINGOS, et al.

**FOR COURT USE ONLY**

FILED

MAY 3 1 2007

LISA M. GALIOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

MARY C. GILBERT

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **M84877** |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | JUDGE: |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive       DEMAND FOR JURY TRIAL

4. Number of causes of action (specify): Five 1)Strict Prod. Liab (Design Defect); 2)Strict Prod. Liab(Failu
5. This case [ ] is [X] is not a class action suit. to Warn; 3)Negligence(3M & Walmart); 4) Negligence
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.) (Domingos,Boggs/York)
Date: May 30, 2007                                                                                        5)Survival Claim
                                                                                                          Punitive Damag
FRANK M. PITRE (#100077)
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 3.220, 3.400-3.403;
Standards of Judicial Administration, § 19



| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| FRANK M. PITRE ESQ., Bar #100077<br>COTCHETT, PITRE & McCARTHY<br>840 MALCOLM ROAD, STE. 200<br>BURLINGAME, CA 94010<br>*Telephone No:* 650-697-6000    *FAX No:* 650-697-0577 | **FILED**<br>JUN 0 8 2007<br>LISA M. GALDOS<br>CLERK OF THE SUPERIOR COURT<br>DEPUTY<br>MARY C. GILBERT |

| *Attorney for:* Plaintiff | *Ref. No. or File No.:*<br>EASLEY |
|---|---|

*Insert name of Court, and Judicial District and Branch Court:*
MONTEREY COUNTY SUPERIOR COURT
*Plaintiff:* JOSEPH EASLEY, ET AL.
*Defendant:* 3M COMPANY, ET AL.

| **PROOF OF SERVICE**<br>**SUMMONS & COMPLAINT** | *Hearing Date:*<br>Thu, Dec. 27, 2007 | *Time:*<br>9:00AM | *Dept/Div:* | *Case Number:*<br>M84877 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS (AND) COMPLAINT; CIVIL CASE COVER SHEET; CASE MANAGEMENT NOTICE; ADR OPTIONS FOR RESOLVING YOUR DISPUTE; BLANK REQUEST TO VACATE OR CONTINUE INITIAL CASE MANAGEMENT CONFERENCE AND ORDER

3.  *a. Party served:*          WALMART STORES, INC.
    *b. Person served:*        MARGARET WILSON, AUTHORIZED AGENT @ CT CORPORATION SYSTEMS

4. *Address where the party was served:*      818 W. SEVENTH STREET
                                              LOS ANGELES, CA 90017

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Tue., Jun. 05, 2007 (2) at: 2:25PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   *on behalf of:* WALMART STORES, INC.
   Under CCP 416.10 (corporation)

7. **Person Who Served Papers:**
   a. APRIL LYN ANDERSON

   ★ **A & A LEGAL SERVICE** ★

   1541 Bayshore Hwy.
   Burlingame, CA 94010-1602
   (650) 697-9431
   GENERAL@AALEGALSERVICE.COM
   Fax (650) 697-4640

   *Recoverable Cost Per CCP 1033.5(a)(4)(B)*
   d.  **The Fee for Service was:**
   e.  I am: (3) registered California process server
       *(i)* Employee
       *(ii) Registration No.:*     4626
       *(iii) County:*              Los Angeles
       *(iv) Expiration Date:*      Fri, Feb. 01, 2008

**BY FAX**

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date: Wed, Jun. 06, 2007

**PROOF OF SERVICE**
**SUMMONS & COMPLAINT**
(APRIL LYN ANDERSON)
*bpit 38834*



| *Attorney or Party without Attorney:* | *For Court Use Only* |
|---|---|
| FRANK M. PITRE ESQ., Bar #100077<br>COTCHETT, PITRE & MCCARTHY<br>840 MALCOLM ROAD, STE. 200<br>BURLINGAME, CA 94010<br>*Telephone No:* 650-697-6000    *FAX No.* 650-697-0577 | **FILED**<br>JUN 0 8 2007<br>LISA M. GALDOS<br>CLERK OF THE SUPERIOR COURT<br>_____ DEPUTY<br>MARY C. GILBERT |
| *Attorney for:* Plaintiff | |
| *Ref. No. or File No.:*<br>EASLEY | |

*Insert name of Court, and Judicial District and Branch Court:*
MONTEREY COUNTY SUPERIOR COURT

*Plaintiff:* JOSEPH EASLEY, ET AL.
*Defendant:* 3M COMPANY, ET AL.

| **PROOF OF SERVICE**<br>**SUMMONS & COMPLAINT** | *Hearing Date:*<br>Thu, Dec. 27, 2007 | *Time:*<br>9:00AM | *Dept/Div:* | *Case Number:*<br>M84877 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2.  I served copies of the SUMMONS (AND) COMPLAINT; CIVIL CASE COVER SHEET; CASE MANAGEMENT NOTICE; ADR
    OPTIONS FOR RESOLVING YOUR DISPUTE; BLANK REQUEST TO VACATE OR CONTINUE INITIAL CASE
    MANAGEMENT CONFERENCE AND ORDER

3.  a. *Party served:*    3M COMPANY
    b. *Person served:*    MARGARET WILSON, AUTHORIZED AGENT @ CT CORPORATION
                           SYSTEMS

4.  *Address where the party was served:*    818 W. SEVENTH STREET
                                             LOS ANGELES, CA 90017

5.  *I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of
       process for the party (1) on: Tue., Jun. 05, 2007 (2) at: 2:25PM

6.  The *"Notice to the Person Served" (on the Summons) was completed as follows:*
    on behalf of: 3M COMPANY
    Under CCP 416.10 (corporation)

7.  *Person Who Served Papers:*
    a. APRIL LYN ANDERSON

    

    1541 Bayshore Hwy.    GENERAL@AALEGALSERVICE.COM
    Burlingame, CA 94010-1602    Fax (650) 697-4640
    (650) 697-9431

| | *Recoverable Cost Per CCP 1033.5(a)(4)(B)* |
|---|---|
| d. **The Fee for Service was:** | |
| e. I am: (3) registered California process server | |
| (i) Employee | |
| (ii) *Registration No.:* | 4626 |
| (iii) *County:* | Los Angeles |
| (iv) *Expiration Date:* | Fri, Feb. 01, 2008 |

**BY FAX**

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date: Wed, Jun. 06, 2007

*Judicial Council Form POS-010*
*Rule 982.9.(a)&(b) Rev January 1, 2007*

**PROOF OF SERVICE**
**SUMMONS & COMPLAINT**

(APRIL LYN ANDERSON)    *April.38833*

# Exhibit 3

*# 0701996*

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
06/05/2007
Log Number 512286077

**RECEIVED**
JUN 0 7 2007

TO:     Tom Boardman
        3M Company
        Legal Dept., 3M Center
        Bldg 220-9E-02
        Saint Paul, MN, 55144-1000

RE:     **Process Served in California**

FOR:    3M Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| TITLE OF ACTION: | Joseph Easley, surviving parents and unlawful heirs of Kasey Jo Easley, deceased, et al., Pltfs. vs. 3M Company, et al., Dfts. |
| DOCUMENT(S) SERVED: | Summons, Cover Sheet, Complaint, Case Management Notice |
| COURT/AGENCY: | Monterey County, Monterey, Superior Court, CA<br>Case # M84877 |
| NATURE OF ACTION: | Product Liability Litigation - Manufacturing Defect - Wrongful death - Difuoroethane |
| ON WHOM PROCESS WAS SERVED: | C T Corporation System, Los Angeles, CA |
| DATE AND HOUR OF SERVICE: | By Process Server on 06/05/2007 at 14:20 |
| APPEARANCE OR ANSWER DUE: | Within 30 days after service - file written response // 12/27, 2007 at 9:00 a.m. - Case Management Conference |
| ATTORNEY(S) / SENDER(S): | Frank M. Pitre<br>Cotchett, Pitre & McCarthy<br>840 Malcom Rd<br>Suite 200<br>Burlingame, CA, 94010<br>650-697-6000 |
| ACTION ITEMS: | SOP Papers with Transmittal, via  Fed Ex 2 Day, 790755200708<br>Email Notification, Kathy Jasperson KMJASPERSON@MMM.COM |
| SIGNED:<br>PER:<br>ADDRESS: | C T Corporation System<br>Dianne Christman<br>818 West Seventh Street<br>Los Angeles, CA, 90017 |
| TELEPHONE: | 213-337-4615 |

Page 1 of  1 / VR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
06/05/2007
Log Number 512286072

**TO:**    Kim Lundy
Wal-Mart Stores, Inc.
702 SW 8th Street, Mail Stop #0215
Bentonville, AR, 72716

**RE:**    **Process Served in California**

**FOR:**    Wal-Mart Stores, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Joseph Easley, surviving parents and unlawful heirs of Kasey Jo Easley, deceased, et al., Pltfs. vs. 3M Company, et al. including Walmart Stores, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Cover Sheet, Complaint, Case Management Notice |
| **COURT/AGENCY:** | Monterey County, Monterey, Superior Court, CA Case # M84877 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Wrongful death - Difuoroethane |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/05/2007 at 14:20 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // 12/27, 2007 at 9:00 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Frank M. Pitre Cotchett, Pitre & McCarthy 840 Malcom Rd Suite 200 Burlingame, CA, 94010 650-697-6000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/05/2007, Expected Purge Date: 06/10/2007 Image SOP - Page(s): 32 Email Notification, Terrez Hightower- CT Temp CLS-Verificationwest@WoltersKluwer.com |
| **SIGNED:** PER: ADDRESS: | C T Corporation System Dianne Christman 818 West Seventh Street Los Angeles, CA, 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / VR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

6|5|07@cv:20pm

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
3M COMPANY; WALMART STORES, INC.; MICHAEL DOMINGOS;
CHRISTOPHER BOGGS, MATTHEW YORK and DOES 1 through
100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOSEPH EASLEY and MARY EASLEY as the surviving
parents and lawful heirs of KASEY JO EASLEY,
deceased; The Estate of KASEY JO EASLEY, through
Decedent's Administrator, JOSEPH EASLEY

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

# FILED

MAY 3 1 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
MARY C. GILBERT DEPUTY

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF MONTEREY COUNTY
1200 Aguajito Road
1200 Aguajito Road
Monterey, CA 93940
Civil Division

CASE NUMBER:
*(Número del Caso):*
**M 8 4 8 7 7**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del demandante, o del demandante que no tiene abogado, es):*
FRANK M. PITRE (#100077)      ALAN F. HUNTER (#099805) (650) 697-6000 (650) 697-0577
COTCHETT, PITRE & MCCARTHY    GAVIN & CUNNINGHAM
840 Malcolm Rd., Ste. 200     1530 The Alameda, Suite 210
Burlingame, CA 94010          San Jose, CA 95126

DATE: **MAY 3 1 2007**       LISA M. GALDOS       Clerk, by       MARY C. GILBERT       , Deputy
*(Fecha)*                                          *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [✓] on behalf of *(specify):* Walmart Stores, Inc.

   under: [✓] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**



Code of Civil Procedure §§ 412.20, 465

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
3M COMPANY; WALMART STORES, INC.; MICHAEL DOMINGOS;
CHRISTOPHER BOGGS, MATTHEW YORK and DOES 1 through
100

**FILED**

MAY 3 1 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
DEPUTY

MARY C. GILBERT

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOSEPH EASLEY and MARY EASLEY as the surviving
parents and lawful heirs of KASEY JO EASLEY,
deceased; The Estate of KASEY JO EASLEY, through
Decedent's Administrator, JOSEPH EASLEY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF MONTEREY COUNTY<br>1200 Aguajito Road<br>1200 Aguajito Road<br>Monterey, CA 93940<br>Civil Division | CASE NUMBER:<br>*(Número del Caso):*<br>**M84877** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

FRANK M. PITRE (#100077)   ALAN F. HUNTER (#099805) (650) 697-6000  (650) 697-0577
COTCHETT, PITRE & MCCARTHY   GAVIN & CUNNINGHAM
840 Malcolm St., Ste. 200   1530 The Alameda, Suite 210
Burlingame, CA 94010   San Jose, CA 95126

| DATE:<br>*(Fecha)* MAY 3 1 2007 | LISA M. GALDOS | Clerk, by<br>*(Secretario)* MARY C. GILBERT | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

# Exhibit 4

1 | P. GERHARDT ZACHER (SBN: 043184)
MORDECAI D. BOONE (SBN: 196811)
2 | CARRIE A. LUBINSKI (SBN: 174006)
GORDON & REES LLP
3 | 275 Battery Street, Suite 2000
San Francisco, CA 94111
4 | Telephone: (415) 986-5900
Facsimile: (415) 986-8054

5

6 | Attorneys for Defendant
3M COMPANY

7 | ROBERT K. PHILLIPS (SBN: 135088)
ERIN J. ILLMAN (SBN: 238262)
8 | PHILLIPS, SPALLAS & ANGSTADT LLP
650 California, 10th Floor
9 | San Francisco, CA 94108
Phone: (415) 278-9400
10 | Fax: (415) 278-9411

11 | Attorneys for Defendant
WAL-MART STORES, INC.

12

13 | SUPERIOR COURT OF CALIFORNIA - COUNTY OF MONTEREY

14

15

16 | JOSEPH EASLEY and MARY EASLEY as the ) CASE NO. M84877
surviving parents and lawful heirs of KASEY )
17 | JO EASLEY, deceased; The Estate of KASEY ) **NOTICE TO ADVERSE PARTY OF**
JO EASLEY, through Decedent's ) **REMOVAL TO FEDERAL COURT**
18 | Administrator, JOSEPH EASLEY, )
)
19 | )
Plaintiffs, )
20 | )
vs. ) Complaint filed:  May 31, 2007
21 | )
3M COMPANY; WALMART STORES, INC.; )
22 | MICHAEL DOMINGOS; CHRISTOPHER )
BOGGS, MATTHEW YORK and DOES 1 )
23 | through 100, )
)
24 | Defendants. )

25 | TO PLAINTIFFS JOSEPH EASLEY AND MARY EASLEY AS THE SURVIVING

26 | PARENTS AND LAWFUL HEIRS OF KASEY JO EASLEY, DECEASED AND THE

27 | ESTATE OF KASEY JO EASLEY, THROUGH DECEDENT'S ADMINISTRATOR, JOSEPH

28 | EASLEY AND THEIR ATTORNEYS OF RECORD:

*Gordon & Rees LLP*
*275 Battery Street, Suite 2000*
*San Francisco, CA 94111*

1    PLEASE TAKE NOTICE THAT a Notice Of Removal of this action was filed in the

2   United States District Court for the Northern District of California, San Jose Division, on July 5,

3   2007.

4    A copy of the said Notice of Removal is attached to this Notice, and is served and filed

5   herewith.

6

7   Dated:  July 5, 2007                     GORDON & REES LLP

8

9                                            By: _____

10                                           R. Gerhardt Zacher
                                             Mordecai D. Boone
11                                           Carrie A. Lubinski
                                             Attorneys for Defendant 3M COMPANY

12

13   Dated:  July 5, 2007                    PHILLIPS, SPALLAS & ANGSTADT LLP

14

15                                           By: _____

16                                           Robert K. Phillips
                                             Erin J. Illman
17                                           Attorneys for Defendant WAL-MART
                                             STORES, INC.

18

19

20

21

22

23

24

25

26

27

28

NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111